EDITH E. D. BLOUNT *vs.* FRANK A. WHEELER & another.

Suffolk.　March 13, 1908. — June 16, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Contract,* Consideration, What constitutes, Construction, Performance and breach. *Estoppel. Attorney at Law. Equity Jurisdiction,* Specific performance.

At the hearing upon a bill in equity brought by the daughter of a testatrix against the testatrix's son, who was her only other heir or next of kin, to enforce an agreement in writing with regard to the disposition of the estate, it appeared that the defendant, who lived in a distant city, arrived in the city, where his mother had lived, on the afternoon of the day on which she died, that the next morning he told the plaintiff, who had been estranged from her mother for ten years, that " there was a will leaving him everything and her nothing," which was the only knowledge that the plaintiff then had of such a will, that the plaintiff thereupon in good faith stated to the defendant that she would contest the will on the ground of undue influence and want of sanity, and on the evening of that day the plaintiff and the defendant signed the following agreement: " In settlement of the estate of [the mother], it is agreed between [the defendant] and [the plaintiff] that [the plaintiff] will have one third of the estate and [the defendant] will have two thirds," and the plaintiff, in consideration of the defendant's agreement thus to share the estate with her, promised not to make any contest. The funeral of the mother occurred the next day, and, thereafter, the defendant stated that he would not keep the agreement. *Held,* that at the time of the signing of the agreement a contract was made for a valid consideration, from which the defendant could not withdraw.

An agreement by an intending litigant to forbear from litigating a claim, which he in good faith at the time of his agreement thinks is valid, is a good consideration for a contract, although by the state of the law and of the facts as they ultimately are discovered to be, the claim, the prosecution of which is forborne, is neither valid nor enforceable.

At the hearing of a bill in equity to enforce an agreement in writing made between the plaintiff and the defendant, the only heirs at law and next of kin of their mother, lately deceased, as to the disposition of the mother's estate in a manner different from the way in which it was disposed of by a will left by her, it appeared that the agreement was made in consideration of a promise by the plaintiff not to oppose the probate of the will, which gave practically the entire estate to the defendant. On the day before a petition for the probate of the will was filed, the plaintiff employed a lawyer " to enforce the agreement," and gave him no other authority. The lawyer entered his appearance on the probate petition, and the hearing on the petition was continued. The counsel for the person named as executor in the will thereupon prepared for a contest, but, before the date set for a hearing, the plaintiff's lawyer, concluding that the entry of his appearance was a mistake, withdrew it, and the will was proved without opposition. The judge who presided at the hearing upon the bill in equity found " that the plaintiff did not contest the will, and that he was not estopped by the entry of appearance by " the lawyer " or by any acts done in consequence of that

appearance from contending or proving that he did not contest the will." *Held,* that the findings and rulings of the presiding judge were warranted.

At the hearing upon a bill in equity by the daughter of a testatrix against the testatrix's son, who was her only other heir or next of kin, to enforce an agreement in writing with regard to the disposition of the estate, it appeared that the defendant had announced to the plaintiff, after the mother's death and before her funeral, that she had made a will leaving everything to him and nothing to the plaintiff, which was the only knowledge that the plaintiff then had of such a will, that, after some discussion, the plaintiff and the defendant, in consideration of the plaintiff's forbearing to contest the probate of the will, as she in good faith had intended to do if the compromise had not been made, agreed in writing as follows : " In settlement of the estate of [the mother], it is agreed between [the defendant] and [the plaintiff] that [the plaintiff] will have one third of the estate and [the defendant] will have two thirds." The agreement was written by the plaintiff and both parties acted without legal advice, and in ignorance of their legal duties as to producing and proving the will, but they believed that they could settle the estate without proving the will, which neither of them had seen. The will contained several specific legacies to other persons than the plaintiff or the defendant. The judge who heard the case found that " the belief of the parties that they could settle the estate without probating the will and any understanding based upon that belief were merely incidental to the written agreement, and connected with it as a condition. . . . The agreement, fairly construed in the light of all the surrounding facts, means that such property as might remain in the estate after all lawful claims were paid should be divided in the proportions named, and does not require that the legacies shall not be paid or that the will shall not be probated." *Held,* that the conclusion of the judge was warranted.

A widow, who for ten years had been estranged from her daughter, died, leaving a will which gave specific legacies of small amounts to various persons, $5 to the daughter, and the residue of the estate to a son, who was the only other heir at law or next of kin. The estate was personalty. Upon the daughter's stating in good faith that she intended to contest the probate of the will, the son and she, before the will was examined by either and before it was offered for probate, agreed in writing "in settlement . . . that [the daughter] will have one third of the estate and [the son] will have two thirds." The will thereupon was proved without a contest and a third person named therein appointed executor, and, the son refusing to carry out the agreement, the daughter, by a bill in equity against the son and the executor, sought to compel its performance. *Held,* that the bill might be maintained and the agreement specifically enforced; and, *also,* that such a suit was not an interference with the settlement of the estate in the Probate Court.

BILL IN EQUITY, filed in the Superior Court for the county of Suffolk November 14, 1905, to establish and compel performance of an agreement in writing of compromise made between the plaintiff and the defendant Dillaway (hereinafter called the defendant), who were the only heirs at law and next of kin of their mother, as to the disposition of the mother's estate, which, under her will, had been left almost entirely to the defendant.

There was a hearing before *Schofield, J.* The agreement relied on was as follows:

"July 29, 1905.

" In settlement of the estate of Georgianna L. Dillaway, it is agreed between Frank Henry Dillaway and Edith Eliza Dillaway Blount that Edith Eliza Dillaway Blount will have one third of the estate and Frank Henry Dillaway will have two thirds of the estate.

"Frank H. Dillaway.

Edith E. D. Blount."

The will of Georgianna L. Dillaway gave a legacy of $5 to the plaintiff, $5 to the plaintiff's daughter, $25 to the defendant Wheeler, whom she named executor, $100 and wearing apparel to a Mrs. Lucy E. Lord, and the residue of her estate to the defendant.

A commissioner was appointed to take the evidence. His report fills two hundred and seventeen pages of the printed record. The presiding judge made a memorandum of his findings of facts and rulings of law, substantially as follows:

"3. The agreement [above set out] was executed on the evening of July 29, which was Saturday. The next day, after the funeral of Mrs. Dillaway [the testatrix], the defendant saw the executor, Mr. Wheeler, and, after an interview with him, told the plaintiff that he would not keep his agreement. The defendant then believed that in order to carry out the agreement it was necessary that the will should not be presented for probate. After the funeral, in his talk with Mr. Wheeler, who acted in entire good faith for the purpose of performing his duty as executor, Dillaway learned that Mr. Wheeler would feel obliged as executor to produce the will.

"4. When the parties entered into the written agreement they supposed that they could rightfully settle the estate without probating the will. They made no express agreement not to present the will for probate, nor did they intend or agree to do any act to deprive legatees or beneficiaries under the will, other than themselves, of any rights under it. The exact details of the provisions of the will were not known to the parties when the agreement was made. On the morning of the twenty-ninth

the defendant Dillaway told the plaintiff there was a will leaving him everything and her nothing.   This was the only knowledge she had of the contents of the will.   She then told her brother she would contest it, for undue influence and on the ground of want of sanity. . . .

[Here followed the paragraph quoted in the paragraph of the opinion numbered four.]

" 6.  The defendant Dillaway testified that, when he told his sister that he would not keep his agreement, her husband said, ' Very well, wife, then we will contest the will.'   This is denied by the plaintiff and her husband.   Upon all the evidence the court finds that no agreement of rescission of the written contract was made.   The parties did not then clearly understand their rights. . . .

[Here follows the paragraph quoted in the paragraph in the opinion numbered three with regard to the acts of Mr. Hodgdon.]

" 8.  The court finds that the written agreement of July 29 was supported by sufficient consideration.   The plaintiff in good faith stated to the defendant, her brother, that she would contest the will on the ground of undue influence and want of sanity, and in consideration of his agreement to share the estate with her promised not to make any contest.   The court rules that she is not required to go further and prove that there was a doubtful question as to sanity or undue influence in order to establish a valid consideration.   She had the right, acting in good faith, to go to court and make a contest and she promised not to exercise that right, and did not exercise it.

" 9.  The jurisdiction in equity is sustained upon the ground that the remedy in equity is superior to that at law.   The plaintiff may have an action at law upon the written agreement, when the estate is settled.   She cannot allege a breach or recover judgment at law until the executor has actually paid the residue of the estate to defendant Dillaway.   *Daniels* v. *Newton,* 114 Mass. 530.   Equity will establish the right of the plaintiff in advance, and prevent payment to defendant Dillaway, and order the executor to pay direct to the plaintiff in accordance with the agreement when the time for payment arrives.

" 10.  A decree may be prepared for the plaintiff in accord-

ance with the foregoing directions, and providing for the execution of such orders and acquittances by the defendant Dillaway and by the plaintiff as may be necessary for the protection of the executor. The total amount of the estate is $5295, consisting of deposits in savings banks."

Other facts are stated in the opinion.

A decree was entered according to the memorandum, and the defendants appealed.

*H. D. McLellan,* (*L. G. Roberts* with him,) for the defendants.

*E. Greenhood,* for the plaintiff.

LORING, J. This is a bill brought by a sister against her brother and against the executor of the will of their mother. The plaintiff seeks to establish an agreement of compromise between her brother and herself as to the will and property of their mother, and to have the executor directed to pay to her one third of the residue when his accounts are settled in the Probate Court and the time for distribution shall have come.

The mother died at 1.30 A. M. on Friday, July 28, 1905, at the City Hospital. There had been an estrangement between the plaintiff and her mother for some ten years. The brother lived in New York. He reached Boston in the afternoon of the day of his mother's death, and went directly to the house of the plaintiff in Everett. The judge found that " on the morning of the twenty-ninth the defendant Dillaway told the plaintiff there was a will leaving him everything and her nothing. This was the only knowledge she had of the contents of the will." They made the agreement of compromise on the evening of that day. By this agreement the plaintiff promised not to contest the will and the defendant promised that he would share with her, she taking one part and he two parts of the estate.

The mother was buried on Sunday. After the funeral the brother told his sister that he would not keep his agreement. The will was admitted to probate on September 28, without opposition, and this bill was filed on November 14.

The cause was heard on the merits, the evidence being taken by a commissioner. The judge made findings of the material facts and ordered a decree to be entered for the plaintiff. In pursuance of that order a decree was entered declaring that by

virtue of the agreement of compromise the plaintiff was entitled to one third of all moneys coming to the defendant in addition to one third of the legacy of $5 bequeathed to her, and directing the defendant Wheeler as executor to make said payments after the settlement of his final account in the Probate Court. It was further provided in said decree that the plaintiff should have the same standing in the probate proceedings that she would have had if the plaintiff and defendant had been residuary legatees.

The case is now before us on an appeal by both defendants.

1. The first contention of the appellants is that the offer of the defendant was by its terms to ripen into a contract of compromise on the plaintiff's not contesting the probate of the will, that it was withdrawn before the time for such an acceptance came, and therefore no contract ever came into existence. But the plaintiff testified that when the defendant made the offer to her she told him that she would not contest the will. The judge in terms found that to be true. He found that " the plaintiff in good faith stated to the defendant, her brother, that she would contest the will on the ground of undue influence and want of sanity, and, in consideration of his agreement to share the estate with her, promised not to make any contest." After a careful examination of the whole evidence we see no reason to overturn that finding.

2. Their second contention is that on the evidence there was as matter of law no valid consideration because it was not proved that the plaintiff had a fair chance of success in contesting the will. Their argument in support of this contention is that forbearance to prosecute an invalid claim is not a valid consideration for a promise unless " the promisee as a reasonable person believed that she had some fair chance of already succeeding in the contest." As we have already said, the judge found that the plaintiff " acted in good faith " in stating that she would contest the will and in agreeing not to contest it in consideration of his agreement to share with her. The judge further ruled "that she is not required to go further and prove that there was a doubtful question as to sanity or undue influence in order to establish a valid consideration. She had the right, acting in good faith, to go to court and make a contest and she promised not to exercise that right, and did not exercise it."

There are decisions in other jurisdictions for the position taken by the appellants. A collection of the decisions to that effect may be found in Wald's Pollock on Contracts (3d Am. ed.) 214, note 23.

But since the decision of this court in *Prout* v. *Pittsfield Fire District*, 154 Mass. 450, those cases are not law in this Commonwealth, and the earlier case of *Palfrey* v. *Portland, Saco & Portsmouth Railroad*, 4 Allen, 55, must be taken to be modified accordingly. This court in *Prout* v. *Pittsfield Fire District* adopted the rule finally established in England in *Miles* v. *New Zealand Alford Estate Co.* 32 Ch. D. 266, in which *Cook* v. *Wright*, 1 B. & S. 559, *Callisher* v. *Bischoffsheim*, L. R. 5 Q. B. 449, *Ockford* v. *Barelli*, 20 W. R. 116, and the doubts thrown on those decisions by Lord Esher, M. R., in *Ex parte Banner*, 17 Ch. D. 480, 490, were considered at length. The rule there laid down was stated on page 291 with accuracy by Lord Bowen to be: " If an intending litigant *bona fide* forbears a right to litigate . . ., he does give up something of value." He added, speaking of the case then before him, " I think therefore that the reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concession." Again, on page 292, Lord Bowen says: " When the Master of the Rolls in *Ex parte Banner* [17 Ch. D. 480] says he doubts, if there was really and obviously no cause of action, whether the belief of the parties that there was, would be sufficient ground for a compromise, I agree if by that he means there must be a real cause of action, that is to say, one that is *bona fide* and not frivolous or vexatious ; but I do not agree if he means by a real cause of action some cause of action which commends itself to the ultimate reasoning of the tribunal which has to consider and determine the case."

The case of *Prout* v. *Pittsfield Fire District* was affirmed in *Kennedy* v. *Welch*, 196 Mass. 592. In the case at bar, having regard to the knowledge of the plaintiff, can it be said that her claim was a vexatious or frivolous one? Unless a duly executed will had been made, she was entitled as one of the two next of kin to a half of her mother's estate. She had just been told by the other next of kin, her brother, that their mother had left a

will by which everything had been bequeathed to him. Even although she had been estranged from her mother for ten years, a determination to examine the will and the circumstances under which it had been made could not be said (having regard to the knowledge of the plaintiff) to be either vexatious or frivolous. We are of opinion that this finding and this ruling were right. The claim in *Palfrey* v. *Portland, Saco & Portsmouth Railroad,* 4 Allen, 55, was a frivolous and vexatious one.

3. The next contention made by the appellants is that the plaintiff did not keep her agreement not to contest the will. Whether what was done by the plaintiff and her attorney did or did not amount to a performance of that promise depended upon the credit given by the judge to the conflicting stories told on one side and the other. It is enough to say that the judge believed the story told by the plaintiff's witnesses. His finding on this point was as follows: " The will was presented for probate in the Probate Court on August 1, 1905. The plaintiff on the day before had employed Charles W. Hodgdon, an attorney at law, and instructed him to enforce the agreement. This was the only authority given to the attorney. Mr. Hodgdon entered his appearance on the probate petition as attorney for Mrs. Blount. The case was continued to September 28, when the will was admitted to probate without contest, and no appeal was taken. Before that date Mr. Hodgdon had concluded that the entry of his appearance was a mistake, as a means of enforcing the agreement, and on September 27 withdrew it, after consulting with other counsel. Mr. Roberts, the attorney for the executor, after the entry of Mr. Hodgdon's appearance and after conversation with him, believed that the will was to be contested, and made some preparation for a contest before the appearance of Mr. Hodgdon was withdrawn. The court finds as a fact that the plaintiff did not contest the will, and that she is not estopped by the entry of appearance by Mr. Hodgdon in the probate court, or by any acts done in consequence of that appearance from contending or proving that she did not contest the will."

4. The fourth contention made by the appellants is that the agreement of compromise is an agreement between the plaintiff and her brother to divide the estate without probate of the will. This was disposed of by the judge in these words: " The belief

of the parties that they could settle the estate without probating the will and any understanding based upon that belief were merely incidental to the written agreement, and not connected with it as a condition.    Both parties were acting without legal advice when the agreement was made, and in ignorance of their legal duties in regard to the production and probating of the will.    The court finds that the written agreement fairly construed in the light of all the surrounding facts means that such property as might remain in the estate after all lawful claims were paid should be divided between the parties to it in the proportions named, and does not require that the legacies shall not be paid or that the will shall not be probated."    We agree with that conclusion.

5.  The last position taken by the appellants is that there is no jurisdiction in equity.

We do not stop to consider whether this objection was taken at the proper time, for we are unanimously of opinion that the position is not sound.

The jurisdiction of this court specifically to enforce an agreement of compromise of a will where some of the property in question is real estate was upheld in *Leach* v. *Fobes*, 11 Gray, 506.    The question now presented is not covered by that case because the property now in question consists of personalty only.

We are, however, of opinion that in such a case as that now before us an agreement of compromise will be specifically enforced.

One who contests the validity of an instrument offered as the last will of another, under which the contestant claims as next of kin, and who by an agreement of compromise becomes entitled to a share of the residue, is entitled to the same standing in the probate proceedings that a person has to whom part of the residue is bequeathed.    This right is expressly given to the plaintiff by the decree now under consideration.    The right of such a contestant to such a standing in the probate proceedings is recognized in decrees establishing an agreement of compromise under R. L. c. 148, § 15, where the aid of the court is necessary for making the compromise.    It is the practice to insert a clause in decrees made under that act, providing that the executor

shall administer the estate in accordance with the agreement of compromise established by the decree. See in this connection *Bartlett* v. *Slater*, 182 Mass. 208 ; and in connection with that case see *Hastings* v. *Nesmith*, 188 Mass. 190. That practice is not decisive of the jurisdiction in equity in the case at bar. The jurisdiction in equity in those cases is given by the statute (R. L. c. 148, § 15), and the insertion in such decrees of the clause just spoken of might well stand as a clause necessary to do complete justice when equity has taken jurisdiction for another purpose.

We are, however, of opinion that the right recognized by this clause is a ground for equity's taking jurisdiction, and that in cases where there is no necessity for action under R. L. c. 148, § 15, to make a compromise valid (see *Abbott* v. *Gaskins*, 181 Mass. 501, 506), if the rights of the contestant under such an agreement of compromise are not recognized by the executor, the contestant can by a bill in equity compel him (the executor) to recognize the rights given him (the contestant) under the agreement of compromise. Were this not so the executor and the other party to the compromise could settle the estate without reference to the contestant, leaving to him only a right to collect by an action at law the share so established. That does not give him what he is entitled to.

There is nothing in the further objection that such a bill in equity as that now before us and the decree entered in the Superior Court are an undue interference with the settlement of the estate in the Probate Court. Where a bill for instructions is brought in the Supreme Judicial Court by a trustee appointed by the Probate Court, his accounts are settled there and the distribution of the amount so found due is made here. See *Brown* v. *Wright*, 194 Mass. 540 ; *Green* v. *Gaskill*, 175 Mass. 265. The same method of proceeding should be followed in cases like the case at bar.

*Decree affirmed.*