LENA M. SILVER & others *vs.* CHARLES L. GRAVES.

Suffolk.    May 15, 1911. — September 6, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY,
SHELDON, & RUGG, JJ.

*Contract,* Validity, Consideration.  *Release.  Estoppel.  Lord's Day.  Pleading,*
*Civil,* Answer.  *Practice, Civil,* Venue, Abatement.  *Words,* "Satisfactory."

A promise made by the son of a testator, to whom was left the principal part of
his father's estate, that if his three sisters, who had appealed from a decree of
the Probate Court allowing the will, would withdraw their appeal he would
"make it right with them with a certain sum," refusing to name any specific
amount, and that he would "give them a sum of money that would be satisfac-
tory," is a promise to pay to his sisters on such withdrawal what ought to sat-
isfy a reasonable person or what is fair and just as between the parties under
the circumstances existing, and, on the performance of the consideration by the
sisters' withdrawal of their appeal, becomes a binding contract which is not bad
for uncertainty or indefiniteness.

The withdrawal of an appeal from a decree of the Probate Court allowing a will is
a good consideration for a promise to pay money to the person withdrawing the
appeal, if the contest was a genuine one and made in good faith, whether in fact
it was well grounded or not.  In the present case there was held to have been
evidence of good faith.

In an action by three sisters against their brother, who was the principal bene-
ficiary under the terms of their father's will, and who also was made executor
of that will, upon a promise of the defendant to pay the plaintiffs "a sum of
money that would be satisfactory" if they would withdraw their appeal from a
decree of the Probate Court allowing the father's will, it appeared that by the
terms of the will each of the plaintiffs had been given the sum of $100, that, after
the promise was made by the defendant, the plaintiffs withdrew their appeal, and
that thereafter each of them received from the defendant as executor a check for
$100 and executed and sent to the defendant a receipt for this sum releasing the
executor and the estate "from any and all further liability to me on account of
said estate."  *Held,* that the acceptance of the legacies and the execution of the
releases did not preclude the plaintiffs from prosecuting their action against
the defendant on his personal undertaking, such action not being a claim against
the estate of the father.

In an action upon an oral contract it is proper to admit in evidence a conversation
which occurred on Sunday, if it was merely preliminary to the contract which
was concluded on a secular day.

In an action on an oral contract, the defense that the contract was made on Sunday
must be pleaded in order to be available or in order that a conversation relating
to the contract should be objected to because it took place on Sunday.

The objection that an action of contract is brought in the wrong county by reason
of the residence of the parties, all of whom are residents of the Commonwealth,
can be taken only by a plea in abatement, and the question cannot be raised for
the first time by a request for a ruling at the close of a trial.

CONTRACT, by three sisters against their brother, alleging that on February 15, 1905, the father of the plaintiffs and the defendant died, leaving a will by which the defendant was given the greater part of the father's estate, that the plaintiffs contested the allowance of this will and took an appeal from a decree of the Probate Court allowing it, that in consideration of the plaintiffs promising to withdraw their appeal the defendant promised to give them a reasonable sum therefor, that thereupon the plaintiffs withdrew their appeal, but that the defendant refused to perform his promise.   Writ dated October 24, 1907.

The defendant's answer consisted of a general denial.

In the Superior Court the case was tried before *Lawton,* J. The facts appeared in evidence which are stated in the opinion.

It appeared that, after the withdrawal of their appeal, each of the plaintiffs received from the defendant as executor a check for $100 and each executed and returned to him the following release: " Massachusetts, August 16, 1905.  Received of Charles L. Graves, executor of the last will and testament of Enos D. Graves, late of Wendell, deceased, the sum of one hundred dollars in full for all legacies, distributive shares, demands or claims whatsoever against said deceased or his estate, and said executor and his bondsmen are hereby released from any and all further liability to me on account of said estate."

A certified copy of the inventory of the father's estate filed by the defendant as executor was offered in evidence by the plaintiffs and was admitted by the judge against the defendant's exception.   The inventory showed personal estate as per schedule, $10,912.90, real estate $2,175.50.   The plaintiffs called the defendant to the witness stand and the defendant stated subject to the defendant's exception that the net amount received by him as residuary legatee approximated $7,500.

It appeared in evidence that at the time of the bringing of the writ none of the plaintiffs resided in the county of Suffolk except the plaintiff Harriett Tenney.   She testified that she was a dressmaker who went to work by the day and that she had lived at various places in Boston; that when not working she went to her sister's home in Gardner and that letters addressed to her in Gardner would reach her.

At the close of evidence for the plaintiffs the defendant asked the judge to rule:

"1. That upon all the evidence, as a matter of law, the plaintiffs could not recover.

"2. That there was a misjoinder of parties, and, if any action existed, it was several and not joint.

"3. That this court [the Superior Court for the county of Suffolk] did not have jurisdiction of the action."

The judge refused to make any of these rulings, and submitted the case to the jury, who returned a verdict for the plaintiffs in the sum of $2,400. The defendant alleged exceptions.

The case was submitted on briefs at the sitting of the court in May, 1911, and afterwards was submitted on briefs to all the justices.

*W. A. Davenport*, for the defendant.

*G. H. Tinkham & S. E. Duffin*, for the plaintiffs.

RUGG, J. The father of the three plaintiffs and of the defendant was survived by them and a widow. By his will each of the plaintiffs was given $100, the widow $1,000, and the defendant the residue of the estate amounting to about $7,500. The defendant was made executor. The plaintiffs appealed from a decree of the Probate Court allowing the will. There was evidence tending to show that during the pendency of the appeal there were several conferences between the plaintiffs or some of them and the defendant, at which the defendant promised the plaintiffs that, if they would withdraw the appeal and let the will be allowed, he would "make it right with [them] with a certain sum" and "give [them] a sum of money that would be satisfactory." He declined to name any specific sum of money which he would pay to them. As a consequence of his promise the plaintiffs withdrew their appeal, and the will was allowed finally. This action is brought to recover for the breach of this agreement.

1. The Superior Court refused to rule that upon all the evidence the plaintiffs could not recover. It is urged that this ruling should have been given for the reason that there was no evidence sufficient to show a binding contract. The promise was between parties competent to contract with each other. It was not tainted with illegality. It was to do a specific thing, namely, to withdraw an appeal in proceedings in court which

had been seasonably taken and was pending. The pendency of a genuine cause in court is a definite subject about which to contract. Forbearance to prosecute further such a cause is an adequate consideration for a binding agreement. The only matter which was indefinite was the price to be paid for such forbearance. This was not left wholly to conjecture, for the parties were not silent about it, but might have been found to have agreed that it was to be a sum which would be " right " or " satisfactory." This means what ought to satisfy a reasonable person, or what was fair and just as between the parties. *Handy* v. *Bliss*, 204 Mass. 513, 519. In determining what ought to be satisfactory to a rational person, all the circumstances of the controversy should be considered, and each given its due weight. The conditions under which the will was executed, the physical health and mental power and individual characteristics of the testator, the strength or weakness of the grounds upon which any contest of the allowance of the will might have been predicated justly, the amount of property which each of the plaintiffs might have received in case of intestacy, and the sum actually given to each under the will, for example, are elements to be considered in ascertaining what would be a fair compensation for the concession by the plaintiffs and the advantage to the defendant. It is true that in some aspects of the case there would be little if any gain to the parties from a contract of this sort. In some respects the range of inquiry might be as extensive in an action like this as in the original controversy. But that is no ground for not enforcing the contract, if it is found to have been made. The only element left undetermined in this contract is that of price. But this is not infrequently found to be indefinite in contracts of sale and for work and labor. It is not necessary that the subject matter of such a contract should possess a price in the market or be bartered commonly in trade. It is enough if there is a reasonable value, which can be ascertained by the practical methods of trial. The difficulty of fixing the compensation is no greater than occurs in many cases. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 8. *C. W. Hunt Co.* v. *Boston Elevated Railway*, 199 Mass. 220, 233, 236. *Noble* v. *Joseph Burnett Co.* 208 Mass. 75. This contract has become executed fully on the side of

the plaintiffs by doing that which they agreed to do, and that which they can never recover back in kind. The withdrawal of their appeal wholly deprived them of opportunity for contesting the will. When a contract has been executed on one side, the law will not permit the injustice of the other party retaining the benefit without paying unless compelled by some inexorable rule. No insuperable difficulty arises as to the uncertainty or indefiniteness of this contract. *Carnig* v. *Carr*, 167 Mass. 544. *Raymond* v. *Rhodes*, 135 Mass. 337. *Jewry* v. *Busk*, 5 Taunt. 302. *Acebal* v. *Levy*, 10 Bing. 376, 382.

2. There is no doubt that the forbearance to prosecute a genuine contest in the courts is a sufficient consideration for a promise. In order that it may have this effect, however, the intention must be sincere to carry on a litigation which is believed to be well grounded and not false, frivolous, vexatious or unlawful in its nature. The abandonment of an honest purpose to carry on a litigation, even though its character be not such, either in law or fact or both, as ultimately to commend itself to the judgment of the tribunal which finally passes upon the question, is a surrender of something of value, and is a sufficient consideration for a contract. But the giving up of litigation, which is not founded in good faith, and which does violence to an enlightened sense of justice in view of the knowledge of the one making the concession, is not the relinquishment of a thing of value, and does not constitute a sufficient consideration for a contract. *Blount* v. *Wheeler*, 199 Mass. 330, 336, and cases cited. *Prout* v. *Pittsfield Fire District*, 154 Mass. 450. *Kennedy* v. *Welch*, 196 Mass. 592. *Palfrey* v. *Portland, Saco & Portsmouth Railroad*, 4 Allen, 55. *Attorney General* v. *American Legion of Honor*, 206 Mass. 193, 195. As was said by Morton, J., in *Mackin* v. *Dwyer*, 205 Mass. 472, at 476, " A threat to contest the will, merely for the purpose of compelling the defendant to settle with her and buy his peace without any intention on her part of actually contesting the will if no such settlement was made, would not be sufficient and would not constitute a valid consideration for the defendant's promise." No exception was taken to the instructions given upon this branch of the case, and therefore it must be assumed that they were ample and correct.

The only point open is that a verdict should have been directed

for the defendant on the ground that there was not sufficient evidence to support a finding of an honest intention to prosecute a real contest. The burden of proof in this regard rested upon the plaintiffs. There was some evidence tending to show that the defendant had tried to dissuade one of the plaintiffs from visiting her father during his last illness. There was testimony also that the plaintiffs tried to convince the defendant that their action in claiming the appeal was to protect their rights, and that they thought that they succeeded in that effort. There is an implication possible from the defendant's promise to do " what was right " by the plaintiffs if they would withdraw their opposition to the will, that this claim seemed to him to have some foundation in justice. Moreover, the jury saw all the parties to the controversy upon the witness stand, and their manner of testifying may have furnished the basis for an opinion as to the purpose of the plaintiffs in making the contest. These and all the other circumstances of the case, together with the presumption, which exists commonly that people act in good faith rather than corruptly (*Interstate Commerce Commission* v. *Chicago Great Western Railway*, 209 U. S. 108, 119), rendered improper a ruling that a jury could not find that the contest which the plaintiffs forbore upon the defendant's promise was a real one honestly undertaken. *Rector of St. Mark's Church* v. *Teed*, 120 N. Y. 583, 587.

3. The plaintiffs were not precluded by the acceptance of their general legacies and the signing of formal releases from instituting the present action. Their action is against the defendant individually for a personal undertaking entered into by him before his appointment as executor. It is not a claim against the estate of the father.

4. The conversation which occurred on Sunday was admitted in evidence properly. It was merely preliminary to the contract which was concluded on a secular day. *Miles* v. *Janvrin*, 200 Mass. 514, 518. Moreover, the illegality of the contract was not pleaded, and hence could not be proved as of right. *O'Brien* v. *Shea*, 208 Mass. 528.

5. No error is shown in the admission of the inventory of the estate of the testator in evidence. It was a circumstance pertaining to the estate, and it does not appear that it could have injured the defendant. In some aspects of the evidence it is possible that it

may have been competent, as, for example, an acknowledgment by the defendant of the items of property left by the testator.

6. The promise might have been found on all the evidence to have been to the sisters jointly, and therefore all might join as plaintiffs in a single action. The tenor of the oral testimony, as well as the rational inferences from the situation in which the defendant was placed, seem to indicate that his promise, if made at all, was made to all the plaintiffs jointly. The second request was refused rightly.

7. The only basis for the request, to the effect that the court did not have jurisdiction of the action, seems to be that the residences of the plaintiffs were not such as warranted the laying of the venue in Suffolk County. This did not go to the jurisdiction of the court, but was in the nature of abatement, and could not be raised for the first time by a request for instructions at the close of a trial. *Craig Silver Co.* v. *Smith*, 163 Mass. 262, 268. *Hastings* v. *Bolton*, 1 Allen, 529.

*Exceptions overruled.*

## MEMORANDA.

ON the seventh day of September, 1911, the Honorable MARCUS PERRIN KNOWLTON resigned the office of Chief Justice of this court, which he had held since the seventeenth day of December, 1902, having held the office of a Justice of this court since the fourteenth day of September, 1887.

ON the thirteenth day of September, 1911, the Honorable ARTHUR PRENTICE RUGG was appointed Chief Justice of this court, having held the office of a Justice of this court since the twenty-sixth day of September, 1906. He first sat as Chief Justice at the sitting of the court at Springfield on the twenty-sixth day of September, 1911.

ON the twentieth day of September, 1911, the Honorable CHARLES AMBROSE DECOURCY, one of the Justices of the Superior Court, was appointed a Justice of this court. He first sat with this court at the sitting of the court at Worcester on the second day of October, 1911.