The National Shawmut Bank of Boston *vs.*
James H. Fitzpatrick & others.

Boston Safe Deposit and Trust Company, trustee, *vs.*
Atherton N. Hunt & others, trustees in bankruptcy.
others.

Suffolk.   Middlesex.   November 19, 1925. — May 28, 1926.

Present: Braley, Pierce, Wait, & Sanderson, JJ.

*Limitations, Statute of.   Trust,* Construction of instrument creating trust.

The general statute of limitations is a bar to a suit in equity, begun in June, 1923, by a bank to enforce payment of a demand note for $50,000 dated September, 1916, and secured in part by pledged collateral from the estate of one who, in December, 1916, signed before a witness

and under seal an instrument reading as follows: "Know all men by these presents that I . . . in consideration of one dollar ($1.) to me paid, and of other valuable considerations, the receipt whereof is hereby acknowledged, do hereby guarantee the prompt payment according to the tenor thereof, of all loans made by The . . . Bank . . . to . . . [the maker of the note] for the years 1916 and 1917, at the request of said bank waiving all demand and notice thereon, provided that the total amount for which I shall be liable shall never exceed at any one time the sum of $50,000."

A similar instrument, delivered to the bank by the same guarantor in January, 1919, referring in its terms specifically to loans to the debtor for the years 1918 and 1919, was not an acknowledgement of liability under the previous guaranty and placed the guarantor under no obligation as to the note of 1916.

A will as originally filed for probate gave to a trustee power and authority "to pay expenses of making and changing investments, including brokers' commissions and charges, and insurance premiums, and the cost of repairs, and other expenses of maintaining real estate, out of principal or income, as my trustee may see fit in each case." A contest arising as to the will, a compromise agreement was made and was adopted with the consent of the court. No creditor was a party to the compromise. In the will as changed by the compromise the words "and other debts and expenses of any kind for which the estate . . . is or may become liable" were added after the words "real estate" in the provision of the original will above quoted. *Held*, that the "debts" which the trustee thus was empowered to pay were not "debts" contracted by the testator but were debts arising in the administration of the trust.

A will as originally offered for probate in a paragraph "Fourth," subparagraphs (*c*) and (*d*), set up a spendthrift trust for the benefit of a son and a daughter of the testator, comprising the entire residue of the estate, and contained a provision, "(*e*) No income payable under either of the preceding sub-paragraphs (*c*) and (*d*) of this will shall be assignable or alienable by the respective beneficiaries, or liable for their debts, contracts, or engagements. The periods for payment as established by the trustee are to be considered as the dates of distribution in determining the persons who are entitled to said income." The daughter contested the allowance of the will and an agreement of compromise was adopted with the consent of the court which in terms provided that the articles of the will as to the spendthrift trust, excepting the clause, (*e*) above quoted, should be void; provided for substantial payments outright to the son and to the daughter, and did not provide that payments of income or principal were to be at the discretion of the trustees; and in the will as amended by the compromise specifically included the provision (*e*) above quoted. While a portion of the principal and a payment of income still were due to the son, he became a bankrupt and his trustee in bankruptcy sought his interest under the will. *Held*, that

   (1) The spendthrift trust was eliminated by the compromise;

   (2) The trustee in bankruptcy was entitled to the portion of the principal due the son and to his share of the income as it accrued.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on September 3, 1923, with a writ of summons and attachment dated June 12, 1923. Also, a

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Middlesex on November 26, 1924, by the trustee under the will of Francis X. Fitzpatrick as compromised by an agreement approved by the Probate Court, for instructions.

The two suits were referred to the same master.

The guaranty by the testator Francis X. Fitzpatrick dated December 29, 1915, referred to in the opinion, bore no seal, was signed by him before a witness and read as follows:

"Know all men by these presents, that I, Frank Fitzpatrick, in consideration of one dollar ($1.) to me paid, and of other valuable considerations, the receipt whereof is hereby acknowledged, do hereby guarantee the prompt payment according to the tenor thereof, of all loans made by The National Shawmut Bank of Boston to James H. Fitzpatrick & Company for the years 1915 and 1916 at the request of said bank waiving all demand and notice thereon, provided that the total amount for which I shall be liable shall never exceed at any one time the sum of $50,000.

"Witness my hand and seal at Boston, Massachusetts this 29th day of December, 1915."

The guaranties dated December 22, 1916, and January 17, 1919, likewise bore no seals, were signed by a witness, and were in the same language as the above, except their dates and that, in place of the words and figures "for the years 1915 and 1916," the guaranty of 1916 had in it the words and figures "for the years 1916 and 1917" and that of 1919 the words and figures "for the years 1918 and 1919."

The will of Francis X. Fitzpatrick as originally filed, besides provisions appointing executors and trustees, granting specific legacies to employees, and dividing jewelry and personal property between his son James H. Fitzpatrick and his daughter Ann Frances Fitzpatrick, in an article entitled "Fourth" placed all the rest, residue and remainder of his estate in trust with the Boston Safe Deposit and Trust Company. In subdivision (*a*) of that article, the powers and

authority and duties of the trustee were set forth as they appear in the agreement of compromise, afterwards adopted, and described in the opinion, *infra*, 132, 133, excepting that in the phrase in the compromise agreement "to pay expenses of making and changing investments, including broker's commissions and charges, and insurance premiums, and the cost of repairs, and other expenses of maintaining real estate, and any other debts and expenses of any kind for which the estate of the said Francis X. Fitzpatrick is or may become liable, out of the principal or income, as my trustee may see fit in each case," the words, "and any other debts and expenses of any kind for which the estate of the said Francis X. Fitzpatrick is or may become liable," did not appear in the original will.   It was one of the contentions of the plaintiff in the first suit that this clause in the agreement of compromise, which was approved by the Probate Court and became effective on January 12, 1922, required the trustee to pay the debt to the plaintiff.

Subdivision (*b*) of article "Fourth" of the original will required the trustee to pay $225 each month to Antoinette R. Lawton; subdivision (*c*) directed the payment of one half of the remainder of the income of the trust fund "quarterly or oftener within the discretion of my trustee" to the testator's son James H. Fitzpatrick with liberal provisions for payment of principal to his children after his death and an ultimate division of principal.   Subdivision (*d*) provided for the payment of the rest of the income from the trust to the testator's daughter Ann "such part of said income (or the whole, if my trustee so determines) shall be paid to her at such times as in the judgment of my trustee her needs and necessities may require.   Instead of paying said income to her directly, my trustee may apply the same for her benefit."   There also was a provision for cessation of this payment of income to the daughter in case she made a certain marriage, and other provisions as to the ultimate disposition of the income and of this half of the principal.   Subdivision (*e*) of article "Fourth" of the original will is quoted in the opinion on page 136.

Article "Fifth" of the original will distributed to various

charitable organizations the principal of the fund after the termination of the trusts and in case there was no one to receive the principal under subdivisions (c) and (d) of article "Fourth." Article "Sixth" provided that the gifts made in trust or otherwise in the will were each subject to the condition that the beneficiary should not directly or indirectly oppose the allowance of the will or its admission to probate, and that in the event of a breach by the daughter or by the son of the conditions imposed by the provisions made for their benefit such provisions should become void.

The provisions of the agreement of compromise were in substance as follows:

"The provisions contained in the article of the will numbered 'Fourth,' except those provisions in subdivision '(e)' and those provisions in reference to the powers and authority of the trustee specified in subdivision '(a)' of said article 'Fourth,' shall be treated as void and in lieu thereof the" provisions quoted below were substituted. (By reason of their construction of this subdivision (e), there was a contention that the will as compromised also set up a spendthrift trust in behalf of James H. Fitzpatrick so that the trustees in bankruptcy were entitled to nothing.)

Certain immediate payments to eight nieces and nephews of the testator were directed. Further provisions were.

"Ten per cent of the rest, residue and remainder of said estate, real, personal, and mixed, of every name and nature, and wherever the same may be situated after the payment of the debts, expenses and all legacies and amounts herein mentioned in this will and the legacies to James H. Fitzpatrick and to Ann F. Fitzpatrick, mentioned in article 'Third' of said will, shall be given and paid over to James H. Fitzpatrick, his heirs and assigns forever.

"What remains of my estate after deducting all the legacies, amounts, expenses, debts and bequests heretofore mentioned, and after deducting said ten per cent shall be divided into two equal parts; one part to go to Ann F. Fitzpatrick, and the other part to James H. Fitzpatrick, subject however to certain conditions and trust provisions herein-

after referred to." (The disposition of these two parts and the limitations set as to portions thereof are described in the opinion. Lucy Fitzpatrick, named in the opinion, was the wife of James H. Fitzpatrick and died in 1924.)

There were further provisions for ultimate distribution to certain charities of portions of the principal of the trust fund remaining after the death of the life beneficiaries.

The plaintiff in the first suit, besides the contentions above described, sought to apply the interest of James H. Fitzpatrick under the compromise agreement to the payment of his alleged debt to it. The trustee in the second suit sought the instructions described in the opinion.

Other material facts are stated in the opinion. The suits were reserved by *Pierce*, J., upon the pleadings, the master's report, and exceptions of the several parties thereto, for determination by the full court.

*A. A. Gillette*, for The National Shawmut Bank of Boston.

*C. M. Rogerson*, for Boston Safe Deposit and Trust Company.

*J. B. Studley*, for Ann F. F. Dearth.

*F. J. Carney*, for James H. Fitzpatrick.

*F. R. Mullin*, for trustees in bankruptcy of James H. Fitzpatrick.

BRALEY, J. The defendant, James H. Fitzpatrick, a stockbroker, doing business as "James H. Fitzpatrick and Company," had a continuous loan account with the plaintiff bank from January 1, 1914, to March 22, 1920, in the course of which he gave to the bank, September 13, 1916, his promissory note, now the basis of the first suit, payable on demand for $50,000. This note was one of a series, and the bank upon its "execution and delivery . . . did not pay or credit any new money, but surrendered to James H. Fitzpatrick and cancelled by stamping 'paid' twelve outstanding demand notes of James H. Fitzpatrick and Co." amounting to a face value of $50,000. It was secured by collateral which, having been applied, left a balance as the master finds of $21,853.92 on which interest should be computed at the rate of six per cent per annum from September 1, 1922, when the last payment of interest was made. It is found, that since the first

suit was begun, James H. Fitzpatrick has been adjudicated a bankrupt, and the defendants Atherton N. Hunt, Francis R. Mullin, and Mark M. Horblit have been appointed his trustees.   The bank is entitled to an interlocutory decree against James H. Fitzpatrick for the amount, but the question, whether a special judgment shall be entered under G. L. c. 235, § 24, is not before us on the record.   *Rosenthal* v. *Nove,* 175 Mass. 559.   *Stratton* v. *Hernon,* 154 Mass. 310.

The bill also alleges that Francis X. Fitzpatrick, father of James, otherwise known as Frank Fitzpatrick, gave certain guaranties to secure the payment of the notes dated respectively December 29, 1915, December 22, 1916, and January 17, 1919, copies of which are made part of the bill.   The guarantor however died testate March 4, 1921.   A contest arose over the admission of his will to probate, and the defendants, James H. Fitzpatrick and the Boston Safe Deposit and Trust Company, were appointed special administrators.   But, the parties in interest having entered into an agreement of compromise which was approved by the court of probate, the will as compromised was allowed January 12, 1922, and James H. Fitzpatrick and the Boston Safe Deposit and Trust Company were appointed and duly qualified as executors.   While the guaranties recite that each was under seal, no seal was affixed.   The guaranty of December 29, 1915, was a promise to pay in accordance with the tenor of all the loans made to James H. Fitzpatrick for 1915 and 1916, and the guaranty of December 22, 1916, was to secure payment according to their tenor of all loans made during 1916 and 1917.   But, the debts of the principal to the bank having been paid with the exception of the note in suit, and in each instance, the note being payable upon demand, the causes of action on each guaranty accrued more than six years before June 12, 1923, the date of the writ with the original bill annexed, or January 3, 1924, when the amended bill was filed.   G. L. c. 214, § 1.   The general statute of limitations, which began to run 'on December 29, 1915, and on December 22, 1916, prevents recovery on each of these guaranties. G. L. c. 260, § 2.   *Fenno* v. *Gay,* 146 Mass. 118.   *Fletcher* v. *Sturtevant,* 235 Mass. 249.   G. L. c. 107, § 29.

The guaranty of January 17, 1919, for the years 1918 and 1919, was delivered to the bank on or about that date. But, no loans having been made during these years, no liability ever arose on this guaranty; and it was not an acknowledgment of liability under the previous guaranties which would stay the running of the statute. *Krebs* v. *Olmstead*, 137 Mass. 504. *Devine* v. *Murphy*, 168 Mass. 249. G. L. c. 260, § 13.

While the executors gave notice of their appointment and duly filed the required affidavit, it is unnecessary in view of what we have said to consider whether G. L. c. 197, § 9, relating to the limitation of time within which an action can be maintained against them, or whether on the allegations of the bill this court under § 10, notwithstanding the statute, should decree relief in equity where a creditor who has not prosecuted his claim within the time prescribed is not chargeable with culpable neglect.

The plaintiff nevertheless primarily relies on its rights as an alleged beneficiary under the trust created by the compromise. It is provided in the fourth clause of the will as compromised: "I hereby nominate and appoint the Boston Safe Deposit and Trust Company of Boston sole trustee under this will, and give devise and bequeath to it the property that is hereinafter referred to as 'to be held in trust' for the following purposes: — To hold, invest and reinvest, and keep the trust fund invested, in personal property or real estate, or both; to change investments from time to time, to sell at public auction or private sale, either for reinvestment or distribution, without applying to any Court for the purpose, and upon such terms as my trustee may deem expedient, any property, real or personal, which may at any time form part or whole of said trust fund, and no purchaser from the trustee shall be held to see to the application of the purchase money; to lease real estate for a long or short term, to execute and deliver all instruments under seal or otherwise necessary, proper, or convenient for carrying out any of the powers herein given to said trustee; to receive reasonable compensation for services as trustee hereunder; to pay expenses of making and changing in-

vestments, including broker's commissions and charges, and insurance premiums, and the cost of repairs, and other expenses of maintaining real estate, and any other debts and expenses of any kind, for which the estate of the said Francis X. Fitzpatrick is or may become liable, out of the principal or income, as my trustee may see fit in each case; to treat the whole or any part of the proceeds of the sale on any land as principal, although the same may have been wholly or in part unproductive, and irrespective of the length of time during which or the reasons for which it may have been held. Every power and discretion herein given to said Boston Safe Deposit and Trust Company is hereby conferred upon the trustee or trustees hereunder for the time being. My trustee is, however, requested in case of any substantial change in investment to consult and advise with my said son, James H. Fitzpatrick. I make this request without intending to limit or cut down the discretionary powers in this paragraph conferred upon my said trustee."

Manifestly the estate to be held in trust consisted of the property remaining after the debts had been ascertained and paid by the executors. It was not intended that a trust should be created for the benefit of the plaintiff or other creditors of the testator, none of whom were parties to the compromise. The terms of the power "to pay expenses of making and changing investments, including broker's commissions and charges, and insurance premiums, and the cost of repairs, and other expenses of maintaining real estate, and any other debts and expenses of any kind, for which the estate of the said Francis X. Fitzpatrick is or may become liable, out of the principal or income, as my trustee may see fit in each case," refer only to the expenses arising in the administration of the trust. The bank not having been a beneficiary under an express trust, the bill cannot be maintained on this ground. *McNeilly* v. *First Presbyterian Church in Brookline,* 243 Mass. 331. The plaintiff's exceptions to the master's report cannot be sustained, and, the exceptions of the defendants having become immaterial, the bill must be dismissed with costs as to all the defendants except James H. Fitzpatrick.

The second case is brought by the trustee, asking for the following instructions:

"(1) To whom shall the sum of approximately $5,000 out of the $80,000 trust fund for James H. Fitzpatrick be now paid?

"(2) To whom shall the income of the balance of the $80,000 trust fund for James H. Fitzpatrick, after paying the annuity to Antoinette R. Lawton, be paid?

"(3) Is the National Shawmut Bank a beneficiary of any trust fund held by your petitioner and if so of what fund and to what extent; or will said bank become such beneficiary if permitted to bring an action against the executors of the will of said Francis X. Fitzpatrick? What are the duties of your petitioner towards said bank?

"(4) Shall your petitioner make any payment to said National Shawmut Bank and if so to what amount and from what fund and shall your petitioner reimburse itself out of any funds now in its hands or to be received from the executors, and if so from what fund?

"(5) And your petitioner prays for such further orders, directions and decrees as this Honorable Court shall deem meet, including the payment of costs as between solicitor and client."

The will as compromised provided that the residue of the estate after deducting all the legacies, amounts, expenses, debts and bequests hereinbefore mentioned and also deducting ten per cent to be paid to James, was to be divided into two equal parts, one of which was to be held in trust for Ann Frances Fitzpatrick, now the defendant Ann Fitzpatrick Dearth, to pay to her outright $25,000, and out of the net income on the balance $112.50 a month to Antoinette R. Lawton during her life, with provisions for further dispositions after the death of Antoinette R. Lawton and of Ann Frances Fitzpatrick, which are not now material. The other part was to be paid to the defendant James H. Fitzpatrick except $80,000 which was to be held in trust to pay out of the income monthly $112.50 to Antoinette R. Lawton during her life. "The balance of the net income of said trust fund of originally eighty thousand . . . dollars, after the payments

to Antoinette R. Lawton, shall be paid over to Lucy Fitz-
patrick until the death of Antoinette R. Lawton; at the death
of said Antoinette R. Lawton, one-half of the said trust fund
of originally eighty thousand . . . dollars shall be paid over
to James H. Fitzpatrick or his executors or administrators,
and the net income from the other half of said trust fund
originally of eighty thousand . . . dollars shall be paid to
Lucy Fitzpatrick, during her life, quarterly or oftener; if Lucy
Fitzpatrick dies before Antoinette R. Lawton, the trustees
shall first reserve and hold in trust out of one-half of said trust
fund of eighty thousand . . . dollars, the sum of thirty-five
thousand . . . dollars, to provide for the payment upon the
death of the survivor of James H. Fitzpatrick, Lucy Fitz-
patrick and Ann F. Fitzpatrick, of one-half of the bequests to
the charitable institutions hereinafter referred to, and shall
pay over the balance of one-half of said trust fund of origi-
nally eighty thousand . . . dollars, after reserving and de-
ducting said fund of thirty-five thousand . . . dollars to said
James H. Fitzpatrick, or his executors or administrators,
and shall also pay to said James H. Fitzpatrick, or his execu-
tors or administrators, the net income from said sum of
thirty-five thousand . . . dollars until the death of the sur-
vivor of James H. Fitzpatrick, Lucy Fitzpatrick and Ann F.
Fitzpatrick; and shall pay over to James H. Fitzpatrick or
his executors or administrators, the balance of net income
from the fund reserved for the said annuity for Antoinette
R. Lawton. . . .

"Upon the death of the last survivor of James H. Fitz-
patrick, Ann F. Fitzpatrick and Lucy Fitzpatrick, if An-
toinette R. Lawton is then living, the trustee, out of the
said eighty thousand . . . dollars trust fund shall pay over
twenty-five thousand dollars to the charitable institutions, as
hereinafter provided, and shall reserve cash, amounting to, or
securities then of the value of forty thousand . . . dollars, to
support the said annuity of one hundred twelve and 50/100
. . . dollars per month for the benefit of the said Antoinette
R. Lawton and shall pay over the balance of the principal
part of the said trust fund, which was originally eighty
thousand . . . dollars to the administrators and executors of

the said James H. Fitzpatrick, and during the life of the said Antoinette R. Lawton shall pay over monthly to the executors or administrators of the said James H. Fitzpatrick, any income remaining after the payment of the said sum of one hundred twelve and 50/100 . . . dollars to the said Antoinette R. Lawton; and upon the death of the said Antoinette R. Lawton shall pay over to the executors and administrators of the said James H. Fitzpatrick any of the principal and income of the said trust fund, which was originally eighty thousand . . . dollars then remaining in the hands of the said trustee."

The trustees in bankruptcy of James contend that they are entitled to certain sums held by the trustee, namely, $5,000 out of the $80,000 trust fund for the benefit of James, and the income of the balance of the $80,000 after paying the annuity to Antoinette R. Lawton. The master, after stating the amount paid by the executors to James H. Fitzpatrick and the amount transferred to the trustee for the benefit of Ann Fitzpatrick Dearth in cash and securities, reports that the executors also transferred to the plaintiff February 24, 1922, for the benefit of Antoinette R. Lawton and others cash and securities of the value of $80,000, which it still holds. By the terms of the will as drafted by the testator, James H. Fitzpatrick was to have the income of his share of the residue under a spendthrift trust. In article Fourth, subdivision (*e*), was the following provision: "No income payable under either of the preceding sub-paragraphs (*c*) and (*d*) of this Will shall be assignable or alienable by the respective beneficiaries or liable for their debts, contracts or engagements. The periods for payment as established by the trustee are to be considered as the dates of distribution in determining the persons who are entitled to said income." *Boston Safe Deposit & Trust Co.* v. *Collier*, 222 Mass. 390. The agreement, however, was a compromise of the rights of the parties under the will on one side, and of those who claimed that the will was void in respect to matters covered by the compromise, on the other side. *Hastings* v. *Nesmith*, 188 Mass. 190, 194. *Blount* v. *Wheeler*, 199 Mass. 330. If the original will and the agreement for compromise are compared in so far as pertinent

to the questions now presented, it is plain that the spendthrift provisions were purposely omitted.   It was provided in substitution that $5,000 of the trust fund on the death of Lucy, which has happened, and the income of the remaining $35,000, should be payable to James or his executors or administrators and during the life of Antoinette the trustee was to pay to him any income remaining on the other half of the $80,000 after the monthly annuity to her had been satisfied.   The National Shawmut Bank for reasons previously stated is not entitled to participate in the fund, and the trustee is instructed to pay to the trustees in bankruptcy the sum of $5,000, the part of the principal which would have been payable to James if he had not been adjudicated a bankrupt, and that the income of the remainder of the trust fund, namely, $75,000, is also payable to them after deducting the annuity coming to Antoinette.   *Peabody* v. *Tyszkiewicz,* 191 Mass. 317, 322.   *Forbes* v. *Snow,* 245 Mass. 85.

We are of opinion that under the circumstances shown by the record and the order of consolidation in these cases costs should not be allowed in the bill for instructions.   G. L. c. 261, § 12.   The trustee is amply protected for all necessary disbursements and charges in the settlement of its accounts in the court of probate.   *Blount* v. *Wheeler,* 199 Mass. 330, 339.   It results, that decrees are to be entered in each case in conformity with this opinion, the details of which are to be settled before a single justice.   *Southard* v. *Southard,* 210 Mass. 347.

*Ordered accordingly.**

---

*A final decree, entered in the second suit after rescript, in substance directed the trustee to pay to the trustees in bankruptcy of James H. Fitzpatrick the sum of $5,000, and the income of $75,000 after paying $112.50 each month to Antoinette R. Lawton; and that no payment be made to National Shawmut Bank. — REPORTER.