Ripps, J.
This appeal,[1] pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8C, concerns whether there was sufficient consideration by which to enforce three siblings’ agreement to divide their father’s entire estate equally, and, if so, whether any such agreement is barred by the statute of frauds.
The facts, as found by the judge and as supplemented from the record, are not really in dispute. Anthony Menzone died on November 22, 1992 leaving three adult children: sons Robert [the defendant herein] and Joseph [the plaintiff herein] as well as a daughter, Jeannette.[2] Within days of Anthony’s death, Robert read the will and learned that he was to be executor and that Jeannette was preter-mitted. Robert found a strongbox containing about $7,000 in cash and five bank accounts: two accounts, with balances of $86,000 and $58,000, listed him as cote-nant; another account with a $60,000 balance listed Joseph cotenant; another with a $60,000 balance listed no cotenant; and the last for $90,000 listed Joseph’s son as cotenant.
The siblings met on November 27,1992. Robert said it was unfair that Jeannette was excluded and proposed that they divide all of their father’s personal estate and real estate (three known parcels) equally and share equally in all of the expenses. Joseph and Jeannette agreed, and further agreed to “let Robert do his job as executor” and hire a lawyer and an accountant to settle the estate. In effect, Joseph and Jeannette agreed to not contest the will in return for an equal share of the estate.
Subsequently, they went to the credit union which held four of the accounts and learned that the $60,000 account with no apparent cotenant, actually had Jeannette listed as cotenant.
They divided the accounts equally along with the cash in the strongbox. They later went to the bank which held the $86,000 account with Robert as cotenant and divided that into $20,000 each, leaving $26,000 therein for expenses. Thereafter, each contributed $1,600 toward their father’s funeral expenses. Jeannette was repaid some time later, but Joseph was not.
About a week later, Robert discovered two bank accounts, with balances of $103,000 and $29,000 listing him as cotenant and he later discovered additional accounts. The Estate Tax Return eventually listed the assets of the estate to include $214,305 in nine real estate parcels and $507,949 in bank accounts. The net estate totaled $549,680. The three-way split would have entitled each sibling to $183,227.
*162 The family relationship soured as Joseph and Jeannette made further inquiries about money disbursements and the progress of settling the estate. Joseph subsequently hired an attorney who "wrote to Robert in June, 1993 about the progress of settlement and Robert’s use of his father’s vehicles.
When Robert refused to divide the balance of his father’s estate, Joseph commenced this action claiming that Robert breached the agreement to divide the entire estate. Robert claimed that his siblings’ inquiries about the estate and questions regarding his use of the vehicles were breaches of the agreement.
After trial, the judge ruled that there was “no enforceable contract to split all of the Menzone estate three ways as there was a lack of consideration.” He supported this conclusion with the following rulings:
7. To constitute consideration, a promise or a return promise must be bargained for.
8. A hope of a benefit is not valid consideration. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992).
9. In the present case, Robert did not bargain for any of the actions Joseph now claims as his good and valuable consideration. On 11/22/92 Robert made an offer of a gift which implied in fact consideration subsequent attached — not an enforceable contract. Constructive or implied conditions are recognized, Boston Plate and Window Glass Co. v. John Bowen Co., 335 Mass. 697, 700 (1957).
10. Robert’s promise in suggesting the split was to provide Jeannette with some benefit of their father’s estate. Jeannette was not required to do anything.
11. Joseph in agreeing to do what Robert wanted to do was making his own gratuitous pledge to help Jeannette.
12. While Joseph may have conveyed benefits upon Robert, the evidence does not warrant a finding that Robert bargained for these benefits with a reciprocal promise of a three-way exchange of assets on 11/ 22/92. Schwartz v. Strong, 55 Mass. App. Div. 195 (1974) (valuable consideration is measured by whether it has any value as an inducement to the making of the contract and the mutuality of the obligation under it.)
13. While the parties agreed to split the funeral expenses there is no evidence that the agreement to split the estate with Jeannette was contingent upon such actions.
Courts look with favor upon the compromise settlement of estates. Baxter v. Treasurer & Receiver General (Stevens), 209 Mass. 459, 461 (1911). Such agreements may be enforced in equity, Blount v. Wheeler, 199 Mass. 330, 338 (1908), or at law. Silver v. Graves, 210 Mass. 26, 28, 30 (1911).
In Blount v. Wheeler, the mother died leaving all her estate to her son. The son and pretermitted daughter agreed to split the estate 2/3 to the son and 1/3 to the daughter, upon her agreement not to contest the will. The son later refused to divide the estate and defended the daughter’s suit by claiming lack of consideration and failure to comply with the agreement by getting an attorney involved. The court ruled that there was valid consideration because the daughter gave up a right to litigate the will, and she had neither contested the will nor breached the agreement by hiring an attorney to monitor the proceedings.
In Silver v. Graves, 210 Mass. 26 (1911), during the pendency of the appeal from the probate court decree allowing the will, the defendant agreed to “make it right *163 with a satisfactory sum certain” if the plaintiffs withdrew their appeal. They did, the will was allowed, and the defendant reneged. Suit followed for breach of the agreement. The court stated “[t]here is no doubt that the forbearance to prosecute a genuine contest in the courts is a sufficient consideration for a promise.” At p. 30. See also Baxter v. Treasurer & Receiver General (Stevens), supra (an agreement between legatees and a contestant of a will that the latter shall have a certain sum is enforceable by action at law to recover such sum).
“The adjustment of a controversy over the probate of a will is necessarily based upon a dispute, a contest, in the settlement of which those claiming as legatees and devisees whose interests will be affected by the compromise agree that the contestants shall have a sum of money or specific share of the estate or thing of value, Baxter v. Treasurer & Receiver General, 209 Mass. 459, 463, in consideration of the contestants’ promise to withdraw their opposition. Silver v. Graves, 210 Mass. 26, 29.” McDonagh v. Mulligan, 307 Mass. 464, 467 (1940). “There is nothing in that statute[3] or in the common law which prevents heirs at law and next of kin from making an agreement in advance, in good faith and with no unfair advantage taken one over another, as to the division to be made among themselves of the proceeds of such a claim.” Ashley v. Collins, 292 Mass. 67 (1935) (Heirs agreed to property division of intestate’s estate).
Herein, the three children decided to divide the estate equally. Joseph and Jeannette agreed, in effect, not to contest the will and to allow Robert to settle the estate. There was adequate consideration. In addition, Joseph and Jeannette contributed to the funeral expenses which is partial performance of the obligation to split the expenses. “ [Defendants are estopped to set up the statute of frauds by reason of the plaintiffs’ part performance of and change of position in reliance on the contract.” Orlando v. Otaviani, 337 Mass. 157, 161 (1958).
Although Joseph and Jeannette hired an attorney to inquire as to the status of the estate, the attorney was hired to enforce the agreement with Robert and not to contest the will. Cf. Blount v. Wheeler, supra.
For the foregoing reasons, based upon a review of the findings and rulings of the trial judge, we reverse the judgment of the court, enter a judgment for the plaintiff and remand the matter to the trial judge for an assessment of damages in accordance herewith.

 This court previously reversed a grant of summary judgment for the defendant. Menzone v. Menzone, 1999 Mass. App. Div. 58.

 Jeannette assigned her rights to all accounts to Joseph on March 19,1997.

 “The supreme judicial court or the probate court may authorize the persons named as executors in an instrument purporting to be the last will of a person deceased,... to adjust by arbitration or compromise any controversy between the persons who claim as devisees or legatees under such will and the persons entitled to the estate of the deceased under the laws regulating the descent and distribution of intestate estates....” G.L.c. 204, §15.