CARL ZERRAHN *vs.* OLIVER DITSON & others.

Suffolk. March 23. — May 14, 1875. AMES & DEVENS, JJ., absent.

The general agent of the managers of a musical festival wrote a letter to the plaintiff promising, as security for the payment of services to be rendered by the plaintiff, to guarantee a certain sum for his services, provided that the proceeds of the festival resulted in that amount being placed to the agent's credit, and stipulating that neither the executive committee nor any person connected with the festival, except the agent, should be responsible for the fulfilment of the contract, and that, should the festival result in a loss, the plaintiff should have no claim against the agent or anybody else connected therewith. The plaintiff, by letter, accepted this proposition. *Held,* that the plaintiff could not maintain an action against the managers to recover a reasonable compensation for his services after the festival resulted in a loss. *Held, also,* that parol evidence of a conversation between the plaintiff and the agent, prior to the signing of the first letter, in which the plaintiff stated that the letter was not according to their previous talk, and that he did not mean to run any risk, to which the agent replied, " If everything fails, I will make the committee pay you," was not competent to control or vary the letter.

CONTRACT, on an account annexed, for services rendered in superintending and conducting the musical performances and re-

hearsals of " The World's Peace Jubilee." The defendants answer alleged that if the services were rendered, it was under the special agreement contained in the following letters :

" Boston, Feb. 18, 1872. Carl Zerrahn, Esq., Dear Sir : It being your expressed desire to have some security for the payment of services which you propose to render in connection with the forthcoming International Musical Festival, and as the sum of five thousand dollars is the amount you name should be secured to you, I hereby conform to your demand and guarantee that you will receive the sum of five thousand dollars, providing you perform your part in preparing for the festival, and during its occurrence, to the satisfaction of the management, as you always do where you are employed; and further providing that the profits of the festival, including my own benefit, will result in the aforesaid amount being placed to my credit and under my control ; but it must be distinctly understood, that neither the Executive Committee nor any person or persons connected with the festival except myself shall be held responsible for the fulfilment of this contract, which is made this day in good faith with an earnest desire that it shall be fulfilled to the letter and to the entire satisfaction of you and I, who are the sole contracting parties. It is further understood that, should the festival result in a loss, you will hold no demand against myself or anybody else connected with it. Very truly yours, P. S. Gilmore."

" Boston, Feb. 18, 1872. Mr. P. S. Gilmore, Dear Sir : I hereby agree to conform to the proposition made to me this day in your letter relative to my services in connection with the forthcoming International Musical Festival. Very truly yours, Carl Zerrahn."

The answer further alleged that the festival resulted in a loss larger in amount than that sued for by the plaintiff.

The parties filed the following agreement in the case : " It is further agreed that if the plaintiff is entitled to recover anything, it shall be the sum of $3400, with interest from October 28, 1872. It is further agreed, for the purposes of the trial, that the plaintiff rendered services at the Jubilee worth $3400, and is entitled to recover that amount of the defendants unless the court shall find the matters relied upon in defence to be a legal bar to such right of recovery."

At the trial in the Superior Court, before *Pitman*, J., without a jury, the defendants offered in evidence, on cross-examination of the plaintiff, the above letters. The plaintiff objected to the admissibility of these letters as evidence of any contract between the plaintiff and the defendants, or as evidence of any contract whatever, save one between the plaintiff and Gilmore, and contended that the letters did not support the defence relied on, and asked the judge so to rule. The plaintiff also contended that the letters did not constitute any contract for engaging the plaintiff's services, but only a contingent provision for fixing the rate which the plaintiff should receive as between himself and Gilmore, who entered into this provisional agreement in his own behalf, and not in behalf of the management, of which he was not one, and asked the judge so to rule.

The plaintiff also contended, and offered parol evidence tending to show that the last sentence of the first letter was never assented to by the plaintiff. On this point the plaintiff testified to a conversation with Gilmore at the time when the letter was delivered to him, as follows: "Gilmore asked me if I would act as conductor for the Jubilee. We went into No. 4, at the Music Hall. G. gave me this paper; I read it, and said, 'This is not according to our talk. I did not mean to run any risk, and I told you so distinctly. Suppose everything fails, what shall I do to get my pay?' He said, 'If everything fails I will make the committee pay you.' He shook hands over it; I said, 'Mr. G., there is no time to be lost in selecting music. I will keep this paper, if for nothing else, to show that the limit of my salary is to be $5000.' He promised me over and over again to make it right with the committee for me if everything failed." It was admitted that the committee was organized prior to the time of this conversation, viz. on February 12, 1872.

The judge rejected the oral evidence as incompetent to control or affect in any way the contents of the first letter.

Evidence was offered by the plaintiff and received, and not controlled in any way, to the effect, that at the time these letters were exchanged it was understood and agreed between the plaintiff and said Gilmore that the existence of such letters was to be kept private between them, and not made known to the defendants, the managers of the Jubilee; and there was no evidence

offered at the hearing tending to show that said letters were made known to the defendants till after the Jubilee.

The plaintiff also contended that if the letters did not contain a contract directly between the plaintiff and the defendants, then the last sentence of the first letter, (if not controlled by parol evidence,) was still void and invalid for want of consideration, and so should be disregarded, and asked the judge so to rule.

The judge found as facts, that P. S. Gilmore acted as general agent for the defendants, and that this was known to the plaintiff; also, that the Jubilee enterprise was not pecuniarily successful, but that it resulted in a heavy loss to the defendants, who carried it on; also, that on Saturday, February 17, 1872, Gilmore delivered to the plaintiff the first letter, and that, after some conversation, the plaintiff signed and delivered to Gilmore the second letter, both letters being by mistake dated February 18. Both letters were drawn by Gilmore, and brought by him to the plaintiff, to procure him to exchange the same with Gilmore.

The court refused all the plaintiff's requests for rulings, and ruled that the two letters constituted a written contract between the plaintiff and the defendants through their agent, by which the plaintiff was to receive $5000, on conditions which had not been complied with; and ordered judgment for the defendants; the plaintiff alleged exceptions.

*F. A. Brooks*, for the plaintiff.

*M. F. Dickinson, Jr.*, for the defendants.

MORTON, J. At the time the contract contained in the letters set forth in the bill of exceptions was made, Gilmore was the general agent of the defendants, and this was known to the plaintiff. It was the only agreement made with the plaintiff as to his services. The first clause of the contract seems to have been intended to operate only between the plaintiff and Gilmore; but the stipulation in the last clause, that should the festival result in a loss, the plaintiff should have no demand against any one connected with it, is a stipulation in favor of the defendants, made with their agent in the execution of his agency, and they may avail themselves of it in defence of this suit. If the defendants' agent had employed any person under an agreement to serve without compensation, though made in express terms with the agent personally, such person could recover nothing of the de-

fendants. The agreement to serve gratuitously prevents any implication of a promise to pay a reasonable compensation.

We are of opinion that, in this case, as the plaintiff has stipulated that in the contingency which has happened he shall have no demand against the defendants, the law does not imply a promise by them to pay him any compensation for his services, and therefore that the Superior Court correctly ruled that he could not maintain this action.

The court properly rejected the parol testimony of conversations which took place before the contract was signed. It was not competent to control or alter the written contract.

*Exceptions overruled.*