GEORGE A. DICKEY *vs.* TRUSTEES OF THE PUTNAM FREE SCHOOL.

Essex.    November 15, 1907. — February 28, 1908.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Contract,* What constitutes, Implied: common counts.    *Putnam Free School.*

The Trustees of the Putnam Free School, a corporation established under St. 1838, c. 85, to maintain a free school in Newburyport, having an income from a fund bequeathed to it for that purpose, made an agreement of co-operation with the city of Newburyport in connection with the high school of that city,

whereby the corporation furnished the school building at a fixed annual rent to be paid by the city and agreed to maintain and heat the building and keep it in repair, and the teachers of the high school appointed respectively by the school committee of the city and the trustees of the corporation were subject to approval by the other board, so that they became the choice of both bodies. The corporation agreed to pay the salaries of those teachers other than the principal which were appointed primarily by its trustees, and to contribute toward the salary of the principal, if he was satisfactory to the trustees, all above a certain sum not exceeding a maximum amount.   A principal was re-elected by the school committee to serve for an ensuing school year, whereupon the trustees of the corporation voted "neither to approve nor disapprove" of his election. The school committee stood by its action and the principal accepted the election and served during the year.   He was paid $1,600 by the city, and sued the corporation for $400 in an action of contract, with two counts, the first count alleging an express contract to pay him that sum for his services during the school year, and the second count being upon an account annexed. It appeared that, shortly after the plaintiff's election by the school committee, the trustees of the defendant notified the committee that they declined to "pay any portion of the principal's salary for the ensuing year."   There was evidence on which it could be found that the plaintiff first had been elected a number of years before at a salary of $2,000, which he understood had not been changed during the succeeding years, although he knew that $1,600 was the amount paid to him by the city and that the remaining $400, until the last year, had been paid to him regularly by the defendant.   It did not appear that the plaintiff had any knowledge of the contents of the agreement of co-operation between the city and the defendant, or that he ever received from the trustees of the defendant any notice of their official action in refusing to pay his salary.   He knew of a meeting of the school committee at which the matter was discussed and at which the defendant was represented, but his information of the meeting included the statement that the city solicitor, who was present, gave the advice, that under the vote of the trustees the plaintiff's election as principal must be considered valid.   The plaintiff testified that he never had been aware of any dissatisfaction on the part of the trustees as a body and possessed no direct information of their official action.   After the school opened it was conducted in the usual way.   Pupils belonging exclusively to the defendant's school were in attendance and received the usual instruction, and some of the defendant's trustees, including the secretary, were present in the school from time to time.   At the close of the school year the plaintiff, as principal of the school, in the presence of the defendant's secretary, signed and presented the diplomas of the graduating class, which bore also the signatures of the trustees.   *Held*, that on the first count the plaintiff could not recover, there being no evidence of an express contract, but that the plaintiff was entitled to go to the jury on his second count on the ground of an implied contract, there being evidence on which it could be found that the defendant accepted the benefit of the plaintiff's services, without which its school could not have been conducted, knowing that they were not intended to be gratuitous, without giving the plaintiff any express notice that he must be content with what the city paid or else resign.

CONTRACT against the Trustees of the Putnam Free School, a corporation established by St. 1838, c. 85, with two counts, the first count alleging that the defendant engaged and con-

tracted with the plaintiff to be a teacher in its school at Newburyport for the school year beginning in September, 1898, and ending in June, 1899, for the sum of $400 for his services for such school year, that the plaintiff performed the services and that the defendant failed to pay him as agreed, and the second count being upon an account annexed for $400 and interest. Writ dated July 21, 1902.

At the trial in the Superior Court before *Wait,* J., evidence was presented which is described in the opinion. The judge ordered a verdict for the defendant on the first count, on the ground that there was no evidence of an express contract, and submitted the case to the jury on the second count on the ground of an implied contract. The jury returned a verdict for the plaintiff on the second count in the sum of $489.04, which afterwards was corrected as to the computation of interest to be $605.60; and the judge reported the case for determination by this court. If there was any evidence for the jury upon either count, judgment was to be entered upon the verdict.

The case was submitted on briefs.

*J. H. Casey, N. N. Jones & C. T. Smith,* for the defendant.

*H. I. Bartlett & D. N. Crowley,* for the plaintiff.

BRALEY, J. In execution of the trust created by the will of Oliver Putnam, and under the enabling statute of incorporation, the private school for which he provided had been successfully founded and maintained. St. 1838, c. 85. At some period this school and the high school of the city of Newburyport had been unitedly administered, yet the arrangement for a joint administration does not appear to have been perfected until the agreement and plan of co-operation were adopted and made permanent in 1885. If the educational functions of the united schools were substantially similar, the foundations upon which they rested were legally distinct. The high school maintained by the city was a public institution supported by taxation, and subject to the exclusive control of the school committee, while the Putnam Free School was a private institution maintained by the income derived from the fund, and subject only to the control and supervision of the trustees under the act of incorporation. They could not delegate to the school committee the discharge of their fiduciary duties, nor could the committee

confer upon them any of the statutory powers in the selection of teachers, or the management of the high school with which they were clothed. R. L. c. 42, §§ 25–38. *Merrick* v. *Amherst*, 12 Allen, 500, 508. *Jenkins* v. *Andover*, 103 Mass. 94. Under the coalition, while both schools might be lawfully housed in the same building, and with the sanction of the committee instructed by the same teachers, yet when in operation they were distinct educational organizations, and neither became merged in the other. By the terms of the agreement the city paid a fixed annual rental for the use of the school building, which the defendants were to keep in repair, and also were to provide fuel and pay the janitor, while each body, acting separately in the appointment of teachers, approved the selection made by the other, so that the principal and his assistants consequently became the choice of both of the governing bodies. A possible question concerning the expenditure of the public revenue for the support of a private institution was further avoided by the provision, that with the exception of the principal of whose salary, if he was satisfactory to them, the trustees were to contribute all over a certain sum, but not to exceed a maximum amount, the salary of the teachers primarily appointed by the trustees was to be paid by them. In practical operation the arrangement seems not only to have been feasible, but to have worked satisfactorily, until the disagreement over the reappointment of the plaintiff as principal for the last school year of his service. After he had been duly re-elected by the school committee, upon receiving notice of their choice, the trustees voted " neither to approve nor disapprove " of his election, and as the committee did not recede, the plaintiff, having accepted, served during the year. But so far as his claim for salary rests on an express contract with the defendants, he cannot prevail. If the trustees, when acting as a corporate board, could ratify the action of the committee, and thus bind the defendant to the performance of the contract, the answer is, that their vote fails affirmatively to express approval, and there was no ratifying act. The plaintiff's argument, that ratification follows from their subsequent conduct as individuals in remaining silent with full knowledge of the circumstances, is groundless, as shortly after, the trustees notified the committee that under the first clause of

the agreement "they declined to pay any portion of the principal's salary for the ensuing year." The express contract made with him by the committee never having been the contract of the defendants, the ruling that he could not recover on the first count was correct.

It was open, under the second count, however, for the jury to find, that the plaintiff had been originally elected at a salary of $2,000, which he understood had not been changed during the succeeding years, and although in the annual notice received from the committee, it was stated to be $1,600, this sum represented only the amount paid by the city, while the difference, until the last year, had been regularly paid to him by the defendant. Notwithstanding this, the contention is made that upon receiving the last notice he should have understood that his position for the year had become that of principal of the high school only, as the trustees were powerless either to dismiss or retain him, and, if he chose to remain, any services rendered in the instruction of private pupils was purely gratuitous. But it nowhere appears that he had any knowledge of the contents of the joint agreement, or ever received from the defendant any notification of their official action. In a general way, from the comment in the public press, his attention may have been called to some of the particulars of the meeting of the school committee, at which the defendant was represented, but this information also included the explicit statement, that the city solicitor, who was in attendance, advised that under the vote of the trustees his election as principal must be considered valid. While copies of the subsequent votes by which the defendant declined to pay any part of the salary were promptly sent to the committee, yet the plaintiff, who testified that he never had been aware of any dissatisfaction on the part of the trustees as a body, or possessed any direct information of their official action, remained unnotified. The general course of dealing previously followed, and his lack of any authoritative knowledge, due to the inaction of the defendant, would warrant a finding, that when the plaintiff began the term, he had reasonable cause to believe, that under a contract which in form of expression did not differ from those of former years, even if later it turned out to be binding only on the city, he was serving as the principal of both schools. After

the term opened the schools were conducted in the same manner as before.  Pupils belonging exclusively to the defendants' school were in attendance, and received the usual instruction, and some of the trustees, including the secretary, were in attendance from time to time.  At the close of the school year the plaintiff as principal, in the presence at least of the secretary, signed and presented the diplomas of the graduates, which also bore the signatures of the trustees.  Nor is the evidentiary force of this testimony destroyed either by the fact that the bills for services, although sent each month, remained unpaid, or that in response to demands made upon him for payment, the letter of the secretary to him while offering to present his bill to the trustees, also for the first time called attention to the vote " not to pay any portion of the salary of the principal for the ensuing year."  It still could be found from plenary evidence that, with knowledge of all the circumstances, the defendant accepted the benefit of his services, which they well knew were not intended to be gratuitous, and without which its school could not have been conducted.  To say that having done so, it ought not to be held to pay for them, when by an appropriate notice the plaintiff could have been decisively informed that he must be content with what the city paid, or else resign, is to permit the defendants not only to retain the value of his unrewarded labor, which it did not refuse to accept, but indirectly to oblige the taxpayers of the municipality to contribute to the support of a private institution of learning.

The case, therefore, was properly submitted to the jury, and the verdict in favor of the plaintiff must stand.  *Van Deusen* v. *Blum*, 18 Pick. 229.  *Zerrahn* v. *Ditson*, 117 Mass. 553.  *Day* v. *Caton*, 119 Mass. 513, 515.  *Worthington* v. *Plymouth County Railroad*, 168 Mass. 474.  *Spencer* v. *Spencer*, 181 Mass. 471.

*Judgment for the plaintiff on the verdict.*