ANDREW F. EVERS *vs.* ANNIE M. GILFOIL, administratrix.

Middlesex.    November 13, 1923. — January 2, 1924.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

*Contract*, What constitutes, Construction. *Evidence*, Relevancy and materiality.

A merchant sold his business to one who agreed to pay a certain purchase price at the rate of $400 per month. At the time of the sale, the merchant had in his employ one to whom under a contract in writing he had agreed to pay $40 per week. This contract had sixty-four weeks to run. The purchaser of the business continued to employ such employee, and the merchant and the purchaser made an agreement that from the payments of $400 per month there should be deducted the sum of $40 per week paid to the employee and that later the merchant and the purchaser would determine what the employee's services were worth. After the payment of the entire purchase price, excepting the $40 per week deduction agreed upon, the purchaser died and the merchant brought an action against the administratrix of the purchaser's estate with a declaration in three counts, the first upon an express contract to repay the amounts deducted, $2,560, the second for that amount as money had and received by the defendant's intestate to the plaintiff's use, and the third upon an account annexed for that sum as work and labor performed, enumerating the services of the employee at the rate of $40 per week during the sixty-four weeks. A judge found generally for the plaintiff in the sum of $1,920 and interest. *Held,* that

(1) The evidence was ample to warrant a finding that the employee's services were accepted by the defendant's intestate with the intention that eventually they were to be paid for by him;

(2) The circumstance, that the defendant's intestate died before any agreement as to the value of the services of the employee had been arrived at, did not prevent recovery by the plaintiff on a *quantum meruit*;

(3) The agreement for reimbursement of the plaintiff was not void for indefiniteness or uncertainty by reason of the fact that the value of the employee's services was not agreed upon but was left for future determination;

(4) The law implied a promise that the defendant's intestate would pay to the plaintiff what was fair and just in the circumstances as the value to the defendant's intestate of the services of the employee;

(5) The contract having been fully executed on the part of the plaintiff by his consenting to the deducting of the $40 per week from the payments due on the purchase price, a finding was warranted that the defendant was bound to carry out the obligation assumed by the intestate to reimburse the plaintiff in a sum equal to the value of the employee's services to the intestate;

(6) Evidence was admissible, as bearing on the value of the employee's services to the intestate, that, the sixty-four weeks having expired in July and the employee having left the employ of the defendant's intestate for a period, he was reëmployed by the defendant's intestate in the fall of that year at the rate of $30 per week;

(7) It was proper to exclude evidence tending to show a statement by the defendant's intestate in a conversation shortly before his death relating to " how near he was through paying on the mortgage."

CONTRACT, with a declaration in three counts. Writ dated May 23, 1921.

The first count of the declaration was upon an express contract setting out in detail the sale by the plaintiff to the defendant's intestate of a mercantile business for the sum of $24,000, payments to be made monthly at the rate of $400 each with interest at the rate of five per cent on unpaid balances; that at the time of the sale the plaintiff was employing in the business one Dudley at the weekly wage of $40; that after the sale it was agreed by the plaintiff and the defendant's intestate that Dudley should be retained as an employee in the business, that the plaintiff would allow the defendant's intestate to deduct from the monthly payments of $400 the sum of $40 per week which he, the defendant's intestate, would pay Dudley, and that the defendant's intestate " thereupon promised and agreed with the plaintiff that he would repay him such part or all of said $40 per week thus paid to said Dudley as the services of said Dudley should be fairly and reasonably worth; " that Dudley continued as an employee and the defendant's intestate during his employment deducted from the payments to the plaintiff the sum of $2,560. In this count the plaintiff further alleged that the services of Dudley were worth $40 per week and sought repayment of the sum of $2,560 and interest.

The second count of the declaration was for money had and received in accordance with the account annexed, the items of which were for the weekly payments of $40 to Dudley and amounted in all to the sum of $2,560. Interest in the amount of $430.93 was claimed under this count.

The third count was upon an account annexed " for work and labor performed," and the items of the account annexed were " services of Charles W. Dudley for sixty-four weeks from April 1, 1916, to July 7, 1917, at $40 per week, $2,560 " and interest $430.93.

In the Superior Court, the action was heard by *Walsh*, J., without a jury. Material evidence is described in the opinion. The testimony as to a conversation between the defendant's intestate and his brother, referred to in the opinion, was as follows: The brother testified that he had numerous conversations with the defendant's intestate and that the defendant's intestate " never in any of the conversations I had with him ever mentioned he would owe Mr. Evers one cent as a reimbursement for Mr. Dudley's services; " that shortly before the death of the defendant's intestate he had a conversation relating to " how near " the defendant's intestate " was through paying on the mortgage." This conversation was excluded subject to exception by the defendant.

At the close of the evidence, the defendant asked for the following rulings:

" 1. On the whole evidence as presented the plaintiff is not entitled to recover.

" 2. On the evidence as presented in support of the first count in the declaration the plaintiff is not entitled to recover for as a matter of law the alleged promise of the defendant to ' repay him (the plaintiff) such part or all of said $40 per week thus paid to said Dudley as the services of said Dudley should be fairly and reasonably worth ' is uncertain, speculative and is not sufficiently definite as to enable this court to determine what sum, if any, is due the plaintiff.

" 3. On the evidence presented the plaintiff is not entitled to recover for as a matter of law there is not sufficient evidence to show a meeting of the minds in the so called

agreement to repay as will enable the court to find it a valid contract, or that any offer made by the plaintiff was accepted by the defendant so as to beome a binding agreement.

" 4. On the evidence as presented the plaintiff as a matter of law is not entitled to recover any damage under the second count of his declaration.

" 5. On the evidence as presented the plaintiff is. not entitled as a matter of law to recover any damage under the third count of his declaration."

The rulings were refused. The trial judge found for the plaintiff in the sum of $2,433.51, which was a finding of $1,920 principal and $313.51 interest, the principal sum being equal to the amount of $30 multiplied by the sixty-four weeks that Dudley was employed by Gilfoil. The defendant alleged exceptions.

*W. G. Moseley,* for the defendant.

*C. H. Gilmore,* for the plaintiff.

CROSBY, J. On April 1, 1916, the plaintiff sold his furniture and house furnishings business to the defendant's intestate, John F. Gilfoil, who had been in the plaintiff's employ for many years. The purchase price was $24,000, secured by a mortgage upon the property so sold, and was payable at the rate of $400 a month.

At the time of the sale there was in the employ of the plaintiff one Dudley, who had charge of the furniture department; his employment was under a written contract, entered into with the plaintiff several years previously, by the terms of which Dudley was to receive $40 a week for a certain number of years. On April 1, 1916, this contract had sixty-four weeks to run. When the sale of the business to Gilfoil was consummated, nothing was said by the parties about Dudley's contract; shortly afterwards, however, it was called to their attention by Dudley. The plaintiff testified, in substance, that he then had a conference with Gilfoil and it was arranged that Dudley should be retained in the store during the remainder of the term of the contract with the plaintiff; that in view of the monthly payments which Gilfoil was required to make on the purchase price, the plaintiff agreed that Gilfoil could deduct therefrom $40 a

week, and later on he and Gilfoil would determine what Dudley's services were worth. He further testified that he had several talks with the defendant's intestate respecting Dudley's salary; that from time to time he told Gilfoil he was in no hurry for the money that had been deducted to pay the salary, that he did not need it; that he said, "You can have the use of the money and we will settle it at any time;" that about a month or six weeks before his death the decedent told him he wanted to get out of the business; that if he could get a rest he thought he might get well; that he wanted to turn the business over to one O'Melia, "and wanted me to finance it and what money he owed me, both of Mr. Dudley's and myself, could be transferred to the other account."

At the date of the death of the intestate, he had not paid the full amount of the purchase price; but it was admitted at the trial that all the payments due the plaintiff had been made, and that the only question at issue was that of the repayment of the amounts deducted by Gilfoil, with the approval and by direction of the plaintiff, from the monthly payments of $400 due on the note. It appears that Dudley remained at work and was paid $40 a week for a period of sixty-four weeks; in July, 1917, the contract between him and the plaintiff having expired, he went away; later in the fall of that year he entered the employ of Gilfoil, performing substantially the same services as previously rendered, at a weekly salary of $30 a week, and this employment continued until Gilfoil's death.

It is the contention of the defendant that as the parties never agreed as to how much Dudley's services were worth to Gilfoil, there was no binding contract. Where services are performed for another or other benefits are received by him with his knowledge, and there is no evidence that such benefits were conferred gratuitously, the law implies a promise to pay for their reasonable value. If the evidence in the case at bar is insufficient to prove an express contract, it is ample to warrant a finding that Dudley's services were accepted by Gilfoil with the intention that they were eventually to be paid for by him. The circumstance that the

defendant's intestate died before any agreement had been arrived at as to the value of the services will not prevent recovery by the plaintiff on a *quantum meruit.* *Day* v. *Caton,* 119 Mass. 513. *Dickey* v. *Trustees of Putnam Free School,* 197 Mass. 468, 473. The agreement is not void for indefiniteness or uncertainty because the value of Dudley's services was not agreed upon but was left for future determination. *Atwood* v. *Cobb,* 16 Pick. 227, 231. *Newmarket Manuf. Co.* v. *Coon,* 150 Mass. 566, 568. *Carnig* v. *Carr,* 167 Mass. 544. *Silver* v. *Graves,* 210 Mass. 26.

If the presiding judge believed the testimony of the plaintiff, he was warranted in finding that the decedent understood he was expected to reimburse the plaintiff for the deductions made weekly from the purchase price for the purpose of paying Dudley's salary. The only matter that was not agreed upon was the value of the services to Gilfoil; but it could have been found that that was to be settled at a future time. As Gilfoil died before the amount was determined, the law implies a promise to pay what was fair and just between the parties under all the circumstances. The contract has been fully executed on the side of the plaintiff by his consenting that Dudley's salary should be deducted from the payments due on the purchase price. Upon all the evidence it could have been found that the defendant was bound to carry out the obligation assumed by Gilfoil; and she is required to reimburse the plaintiff in a sum equal to the value of Dudley's services to Gilfoil. As was said in *Silver* v. *Graves, supra,* at page 30, " When a contract has been executed on one side, the law will not permit the injustice of the other party retaining the benefit without paying unless compelled by some inexorable rule."

For the reasons stated, none of the rulings requested by the defendant could have been made.

It remains to consider only the exceptions to the admission and exclusion of evidence. The judge admitted, subject to the defendant's exception, evidence that Gilfoil paid Dudley $30 a week after the latter's contract with the plaintiff had expired. This was admissible upon the question of the value of Dudley's services. The exception to the exclusion

of the question calling for a conversation between the deceased and his brother relating to payments on the mortgage given to the plaintiff cannot be sustained. The amount due on the mortgage was not in dispute and it is not apparent that the evidence was relevant to any issue between the parties.

We have considered all the exceptions that have been argued. The others are treated as waived. As we perceive no error of law in the conduct of the trial, it results that the entry must be

*Exceptions overruled.*