BENJAMIN BARNETT *vs.* INDEPENDENT WORKMEN'S CIRCLE OF AMERICA, INCORPORATED.

Suffolk.  November 18, 1926. — March 8, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Contract,* What constitutes.  *Agency,* Existence of relation.  *Corporation,* Officers and agents.

The record upon a report by a trial judge, before whom was tried an action against a fraternal corporation for percentages alleged to be due to the plaintiff for services performed in relation to a building of the defendant, was *held* to disclose no evidence warranting a finding that any officer authorized by the corporation made an agreement to pay the plaintiff for services, or that, on the plaintiff's own testimony, a basis for his claim, grounded upon the building becoming a "paying property," had arisen; and that a verdict for the defendant should have been ordered.

CONTRACT, with a declaration as amended described in the opinion.  Writ dated January 22, 1923.

In the Superior Court, the action was referred to an auditor, who found for the defendant.  After the filing of the auditor's report, the action was tried before *Whiting,* J., upon the report and oral testimony.  The judge denied a motion by the defendant that a verdict be ordered in its favor.  The jury found for the plaintiff in the sum of $1,798.82, and the judge reported the action to this court for determination.

*E. M. Shanley,* for the defendant, submitted a brief.

No argument nor brief for the plaintiff.

BRALEY, J.  This is an action of contract.  The amended declaration is in three counts.  It is alleged in the first count that the defendant engaged the plaintiff to act as superintendent of the building, to rent the building, collect the rents, and to supervise all the work necessary for the remodeling.

The second count sets out a contract whereby he was to receive six per centum of the income from the building and ten per centum of the cost of remodeling, while the count upon an account annexed is for the percentages named in the second count, based on an income of $9,083.33 and on a cost (misstated in the account annexed "income") of $10,010.50, amounting for both charges to $1,546.04. The case was referred to an auditor who found for the defendant, and his report with other evidence was submitted to the jury who returned a verdict for the plaintiff. The plaintiff at the close of the evidence waived any right to recover on an express contract, and the case was submitted on the third count.

It appeared from the plaintiff's evidence that the defendant corporation is a fraternal organization, to the members of which sick and death benefits are paid; the members also belong to different labor unions. The plaintiff testified that he was asked to find a home for the sick members and called the attention of the officers of the organization to the buildings at the corner of Ashland Street and Leverett Street in Boston. The Consumers' Co-operative League, a branch of the Independent Workmen's Circle but an independent corporation organized by the defendant, bought the property and took title, the sale being negotiated by him. He further testified that after the purchase he was made a member of a building committee for the purpose of remodeling the building, and communicated with contractors for bids as the other members of the committee were tailors and persons who knew nothing about a building. The corporation being without funds to finance the undertaking, notes were to be issued by the corporation, to be discounted by the plaintiff, for which he would make a charge to the contractor employed. In furtherance of this plan he borrowed $1,500 on which interest at the rate of one per cent a month was paid by the corporation. The auditor reports that the work of remodeling was begun by the league, but while the work was in process the defendant took title to the property. The plaintiff testified, in substance, that during construction he had a conversation with Samuel Egdall, the defendant's general secretary, who offered him a salary of $25 a week;

that he declined to accept it in that the income from the building was only $150 a month, and the defendant, being a labor organization, should engage a man to work on commission; that the general secretary did not understand what the plaintiff meant by "commission," and said "'I am offering you twenty-five dollars a week, and you are asking six per cent.' . . . [The plaintiff said] 'the building is now bringing you no more than five or six dollars a week' . . . it isn't the question of money.  My opinion is that we can make the building over a good payable proposition for the future . . . 'twelve to fifteen thousand dollars a year; that will pay me very good.  I will be free man.  I can tend my own business.  There will be no kick.'  . . . [The secretary replied] 'I will tell you in a day or two.'  . . . [The plaintiff said] 'That will be satisfactory.'  . . . he said that he would talk it over with the Executive my proposition, 'but one thing,' he says, 'I object . . . you don't know our organization.  We have an expense fund.  Out of the expense fund we can pay you twenty-five dollars a week, but if we are paying you a commission and the building has no income where we will get money to pay you that commission?'  . . . [The plaintiff replied] 'From the income.'  He says, 'We couldn't do such a thing.'  Then I [the plaintiff] explained to him.  He says, we couldn't take it from the expense funds, and there is no money from the rent.  You told me yourself we got to invest money to make rent.  I [the plaintiff] told him he wouldn't have to pay me any money until the building will have an income for paying me.  I will never ask him for it.  I am sure the building can be turned into payable proposition . . . and we went out to lunch, and I began to do work on that building."

The Consumers' Co-operative League, as we have said, was an independent corporation.  It was financed by its shareholders who also were members of the Independent Workmen's Circle.  It nevertheless was a corporation whose obligations to the plaintiff, if any, the defendant on the record was under no legal obligation to pay.  The plaintiff, however, relies on alleged contractual relations with the defendant.  The powers of the general secretary, as shown

by the defendant's by-law in evidence, did not confer on him any authority to enter into any contract of employment with the plaintiff, and there was no evidence that the plaintiff's proposition was ever presented by the general secretary to, or that any action recognizing the plaintiff's proposition was ever taken by, the committee. The officers and personnel of the consumers' league, with which the defendant was affiliated, were practically the same as the workmen's circle. But it does not appear that by virtue of his office the secretary could bind the defendant in matters of contract. It appears that the league was incorporated for the purpose of establishing a co-operative store, and it began to remodel a part of the buildings for subletting. The title was subsequently taken over by the defendant, and the league thereafter was "petitioned into bankruptcy" where its affairs were settled.

The powers of the building committee and whether it was appointed by the league or the defendant do not appear. We assume that the jury could find on the auditor's report that it was composed of members of the defendant corporation. The committee is not shown to have been authorized to designate the plaintiff, one of its members, to act as a supervisor or superintendent for which services he was to be paid compensation in any form, and there is no evidence that the members were to be compensated. It was not disputed that the plaintiff performed considerable work in connection with the alterations of the building and in the collection of rents. But it is manifest that there was no contract with the corporation for the collection of rent, for making contracts, and for construction or supervision of the work, with the performance of which all the members were charged. By his own unequivocal testimony he never informed any of them of the details of the remodeling, nor did he offer evidence from which an inference warrantably could be drawn that, in the absence of such information, they understood and the corporation understood that his services were not gratuitous. Nor did he make any demand for payment on the defendant, or on any of its members and officers, with the exception of the general secretary. The plaintiff, when

he first proffered his services to the general secretary on a salary or commission basis after title had passed to the defendant, told him that "he wouldn't have to pay me any money until the building will have an income for paying me. I will never ask . . . for it. I am sure the building can be turned into payable proposition," and it was uncontroverted that the income has never exceeded the cost.

We discover no enforceable contractual status by implication in the relation of the parties. *Zerrahn* v. *Ditson*, 117 Mass. 553, 557. *Earle* v. *Coburn*, 130 Mass. 596, 598. See *Randidge* v. *Lyman*, 124 Mass. 361.

The motion for a directed verdict should have been granted. The exceptions must be sustained, and judgment is to be entered for the defendant. G. L. c. 231, § 125.

*So ordered.*