JAMES PISCO–PAUSATA *vs.* OLIVER DITSON COMPANY.

Suffolk.    April 9, 1931. — September 9, 1931.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Contract,* What constitutes.

At the trial of an action for breach of an alleged oral contract by the defendant to employ the plaintiff permanently for the sale of certain goods and merchandise, consisting of radios, talking machines and accessories called the Victor line, there was evidence that a salesman employed by the defendant told the plaintiff, in response to his inquiry as to the defendant's "terms and conditions," that "in order to be agent for the Victor people, in order to have the Victor rights, he would have to take the whole Victor line . . . totaling about $600," a sample line of goods; that the plaintiff made such purchase but had not paid for them; that the salesman told the plaintiff that the defendant did not issue franchises or contracts, "but you know the Victor Company. They never failed anybody. Once a dealer is appointed he is always a dealer. We never take off anybody that does

a good job"; and that the plaintiff adopted suggestions by the sales-
man as to enlarging his store and adapting it to the business by building
ing booths, putting up signs and the like, and by spending money in
advertising. The plaintiff contended that the defendant made to the
plaintiff an oral offer of permanent employment which he accepted.
A verdict was ordered for the defendant. *Held*, that the evidence
did not warrant a finding that any such offer was made; and the ver-
dict properly was ordered.

CONTRACT. Writ dated September 2, 1930.

In the Superior Court, the action was tried before *Morton*,
J. Material evidence is stated in the opinion. At the close
of the plaintiff's evidence, the judge ordered a verdict for the
defendant and reported the action for determination by this
court.

*J. J. O'Connor*, for the plaintiff.

*J. A. Lyons*, for the defendant, submitted a brief.

FIELD, J. This action of contract was brought in the
Superior Court. The trial judge at the close of the plain-
tiff's evidence directed a verdict for the defendant, on its
motion, and reported the case to this court upon the terms
that "if the ruling was correct judgment [is] to be entered
for the defendant, otherwise the case to stand for trial."

The declaration alleges that "heretofore the defendant,
for a valuable consideration, appointed the plaintiff perma-
nent agent for the sale of certain of its goods and merchan-
dise, consisting of radios, talking machines and accessories;
that the plaintiff, relying on said appointment and certain
representations made to him by the defendant, invested
large sums of money in the defendant's merchandise, ex-
pended large sums of money for advertising, etc., fulfilling
all his legal obligations under said appointment, but the
defendant, wholly unmindful of its legal obligations under
said appointment, summarily and without any notice to the
plaintiff refused to supply necessary merchandise, repudiated
said appointment." The answer was a general denial.

The verdict was directed rightly.

The plaintiff carried on a store in Boston. The defendant
was a distributor of "Victor products" — radios, talking
machines and accessories. The plaintiff's contention is that
the defendant made an oral contract with him whereby he

was "appointed" by the defendant a "dealer" in "Victor products" and whereby the defendant was bound to supply such merchandise to him upon his order, and that the defendant broke this contract by notifying the plaintiff that he was "taken off" as a dealer and "at present" the defendant could not ship him any goods, though it might "do something" for him later, and by refusing to fill an order for merchandise. The proof, however, did not show that there was such an agreement binding upon the defendant. It is contended, in substance, that the defendant made an offer for such a contract, which the plaintiff accepted by purchasing a sample line of merchandise, and, perhaps, by enlarging his store and adapting it to the business by building booths, putting up signs and the like, and by spending money in advertising. The evidence warranted a finding that the plaintiff did these things, but it did not warrant a finding that the defendant made an offer for such a contract, accepted by the plaintiff's doing these things.

The defendant's treasurer testified that the plaintiff "was a dealer appointed" by the defendant. The evidence of the transaction whereby such appointment was made was as follows: A salesman for the defendant told the plaintiff, in response to his inquiry as to the defendant's "terms and conditions," that "in order to be agent for the Victor people, in order to have the Victor rights, he would have to take the whole Victor line . . . totaling about $600." It was a sample line of goods and was purchased by the plaintiff. (The plaintiff, however, according to his own testimony, never paid for them, though he was given credit on account for some goods returned.) In the course of the conversation the plaintiff said to the salesman, "How do you fellows work this thing out? Do you do the same as the rest of the wholesalers? Do you issue franchises or contracts?" The salesman replied, "No, we do not, but you know the Victor Company. They never failed anybody. Once a dealer is appointed he is always a dealer. We never take off anybody that does a good job," and urged the plaintiff to get started. The plaintiff testified that these representations of the salesman helped to induce him to purchase the sample line of

goods, and that the salesman recommended that the plaintiff should build booths for the accommodation of prospective purchasers of records, put up signs, and dress the windows with posters which the defendant would supply. He testified that something was said by the salesman about a permanent contract — but did not state what was said, that his definition of "permanent" was "forty or fifty years," meaning, "Forever and ever, Amen," and that the word "franchise" meant nothing more or less than a written contract between seller and buyer.

Even if the conversation is interpreted as understood by the plaintiff (see, however, *Taft* v. *Dickinson,* 6 Allen, 553, 555; *Campion* v. *Boston & Maine Railroad,* 269 Mass. 579, 582,) it does not show an offer by the defendant for a contract. The defendant's salesman testified that "franchises or contracts" were not issued. The necessary implication from his assurance to the plaintiff that the defendant did not "take off anybody that does a good job," in the absence of controlling language to the contrary, was that the defendant could "take off" the plaintiff as a dealer if it saw fit. The statement of the salesman to the plaintiff taken as a whole "does not import a legally binding promise, but rather [imports] a hopeful encouragement sounding only in prophecy." See *Hall* v. *First National Bank of Chelsea,* 173 Mass. 16, 19. Consequently, we need not determine whether an express agreement that the plaintiff should be a dealer so long as he did a good job would be sufficiently definite to create an actionable contract.

The plaintiff is not helped by the testimony of the defendant's treasurer as to the plaintiff's rights as dealer. This witness testified not to facts which bore upon the making of a contract or its terms, but rather to his understanding of the plaintiff's rights. His testimony was that "it is true as long as the plaintiff lived up to the conditions and terms imposed upon him by the defendant he had a right to handle Victor goods, if the finances and everything was all right," that as long as the plaintiff "was faithful and pushed their goods conscientiously and paid his bills he could get all the goods he wanted at any time," and that

"the dealer . . . has a right to expect that he will not be cut off as long as he complies with the terms and conditions." This witness testified also to the terms of payment fixed by the defendant. Even if, as we do not decide, this testimony could be found to be an admission on behalf of the defendant that the plaintiff had contractual rights, it was not an admission that such rights were unconditional. Compliance with the terms and conditions has not been proved.

Since the action sounds in contract and, as the report discloses, was so treated by the trial judge, though some of the allegations of the declaration are suggestive of an action of tort, we need not consider whether the evidence would have warranted a verdict for the plaintiff in an action of tort. *Brasslavsky* v. *Boston Elevated Railway*, 250 Mass. 403, 404. Compare *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 384–385. Of course we do not intimate that it would. See *Brown* v. *C. A. Pierce & Co. Inc.* 229 Mass. 44, 47.

In accordance with the terms of the report judgment is to be entered for the defendant.

*So ordered.*