BARNARD H. WEINER *vs.* PICTORIAL PAPER PACKAGE CORPORATION.

Suffolk.    May 3, 16, 20, 1938. — May 3, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX, & RONAN, JJ.

*Practice, Civil,* Appellate Division: appeal, decision. *Law of the Trial. Conflict of Laws. Contract,* Of employment, Construction. *Words,* "Permanent employment."

An appeal from a decision by an Appellate Division ordering a new trial was unauthorized by law and of no effect.

An appeal from a final decision by an Appellate Division, ordering dismissed a report of a second trial of the action had in accordance with its previous decision ordering a new trial, brought to this court for review both the first and second decisions.

A decision by an Appellate Division ordering a new trial of an action was not the law of the case binding on this court upon an appeal from a final decision of the Appellate Division dismissing a report made after the new trial.

Where a plaintiff purported to appeal from a decision by an Appellate Division ordering a new trial and later, as shown by the docket entries, claimed an appeal from a final decision by the Appellate Division ordering dismissed a report made after such new trial, ordered in writing the preparation of the record for transmission to this court of the "first and second appeals," and, upon being given by the clerk a separate estimate of expense of the record "for first appeal" and a larger estimate "for both appeals," deposited the smaller amount "to perfect appeal," procured a printed record relating only to the first trial and the earlier decision of the Appellate Division and entered . it in this court, what was entered must be deemed to be the appeal from the later, final decision of the Appellate Division and to present to this court for determination the propriety of the earlier decision. FIELD, C.J., DONAHUE and COX, JJ. dissenting.

If there was no prejudicial error in the rulings of a district court judge, a decision by the Appellate Division ordering a new trial was error vitiating the second trial, and the party prevailing at the first trial,

on appeal from a final decision of the Appellate Division dismissing a report after the second trial, was entitled to reversal of both decisions and to judgment on the finding at the first trial.

A contract of employment, made in the State of New York without reference to the law of any other particular State, was interpreted according to the law of New York, where "permanent employment" meant an employment to continue indefinitely and until one or the other of the parties wished for some good reason to sever the relation.

A finding that a contract of permanent employment was made under the law of the State of New York was warranted by testimony of the plaintiff that he there interviewed an authorized officer of the defendant, a corporation, at his request on the subject of employment, that the officer asked him to take charge of sales in a certain district, that the plaintiff said that the "arrangement must be permanent, not temporary," and that the officer replied, "you can have the line as long as you want it. At the end of six months come back and write your own contract"; and by testimony by the officer that he would keep a "faithful and efficient employee in permanent employ . . . and that the employee could depend upon the custom of the whole trade not to be fired."

CONTRACT. Writ in the Municipal Court of the City of Boston dated February 4, 1935.

The first trial was before *Devlin, J.*

The case was argued at the May, 1938, sitting of this court before *Lummus, Qua, Dolan & Cox*, JJ., and afterwards was submitted on briefs to all the justices.

*J. E. Hannigan*, (*J. J. Tutun* with him,) for the plaintiff.
*J. J. Mulcahy*, for the defendant.

LUMMUS, J. This is an action of contract upon an alleged agreement to employ the plaintiff. A judge in a district court found generally for the plaintiff, without resting his finding expressly on any one count, and assessed damages in the sum of $15,250. It is evident, however, that the damages were assessed upon the second count, for breach of a contract to give the plaintiff permanent employment, and not upon the first count for breach of a contract to employ the plaintiff for six months. On a report to the Appellate Division, claimed by the defendant, a new trial was ordered on February 2, 1937. Two days later the plaintiff claimed an appeal to this court.

A second trial was had. It resulted in a finding for the plaintiff on the first count only, with damages of $1,125. A report was taken by the plaintiff to the Appellate Divi-

sion, based on alleged errors at the second trial prejudicial to the plaintiff, but was dismissed by that tribunal on February 3, 1938.  That dismissal constituted the final decision of the Appellate Division.  A second appeal to this court was duly taken within five days thereafter, as the docket entries show.  Since the final decision was the last action of the Appellate Division, the only action within five days before the appeal, and the only appealable action of that division, as will appear, we infer that that appeal was from that final decision.  But the plaintiff caused to be printed and presented to us a record showing only the proceedings at the first trial and the action of the Appellate Division upon the first report.

The contention of the plaintiff is, that there was no error at the first trial; that he is entitled to judgment upon the finding made at that trial; that the Appellate Division erred in ordering a new trial; and that all subsequent proceedings arise out of and are vitiated by that error.

The relevant statutes are these.  In a district court "Any party . . . aggrieved by any ruling on a matter of law by a single justice, may, as of right, have the ruling reported for determination by the appellate division when the cause is otherwise ripe for judgment, or sooner by consent of the justice hearing the same. . . . If the appellate division shall decide that there has been prejudicial error in the ruling complained of, it may reverse, vacate or modify the same or order a new trial in whole or part; otherwise it shall dismiss the report . . . ."  G. L. (Ter. Ed.) c. 231, § 108.  "An appeal to the supreme judicial court shall lie from the final decision of the appellate division of any district court. . . . Claims of appeal shall be filed in the office of the clerk of the district court within five days after notice of the decision of the appellate division.  The appeal shall not remove the cause, but only the question or questions to be determined. . . ."  § 109.

1. The action of the Appellate Division in ordering a new trial was not a "final decision" from which an appeal could have been claimed and entered at once in this court.  So much is settled beyond dispute.  *Real Property Co. Inc.*

v. *Pitt*, 230 Mass. 526. *Hall Publishing Co.* v. *MacLaughlin,*
230 Mass. 534. *Matson* v. *Sbrega,* 250 Mass. 138. *Demers*
v. *Scaramella,* 252 Mass. 430. *Endicott Johnson Corp.* v.
*Hurwitz,* 284 Mass. 378. *Cunniff* v. *Cleaves,* 288 Mass. 325.
*Hammond* v. *Boston Terminal Co.* 295 Mass. 566. *Gill* v.
*Stretton,* 298 Mass. 342. *Robinson* v. *Wm. Brown & Sons
Co.* 301 Mass. 316.

Beyond that point we find conflicting statements in the
reported cases. There are intimations that an appeal may
be taken from the interlocutory decision of an appellate
division ordering a new trial, although such an appeal
cannot be entered in this court until the new trial has
been had, a final decision of the Appellate Division obtained,
and an appeal from that final decision taken. *Beacon Tool
& Machinery Co.* v. *National Products Manuf. Co.* 252
Mass. 88, 91. *Stafford* v. *Commonwealth Co.* 263 Mass.
240. Apparently upon the same theory that an interlocu-
tory decision by an appellate division is appealable, in
*Daniels* v. *Cohen,* 249 Mass. 362, 363, 364, 365, where
there was no appeal from a former decision of an appellate
division remanding the case, after a finding for the plaintiff,
for a new trial on the question of damages only, it was
said that the ruling of the Appellate Division "became the
law of the case," and that "questions arising at the first
hearing before the Appellate Division are not before us"
on appeal from the final decision of the Appellate Division.

On the other hand, it has been said, in what we think is
strict conformity to the statute, that it is a "final deci-
sion" from which "alone appeal lies to this court." *Real
Property Co. Inc.* v. *Pitt,* 230 Mass. 526, 529. *Hall Pub-
lishing Co.* v. *MacLaughlin,* 230 Mass. 534, 536. *Patterson*
v. *Ciborowski,* 277 Mass. 260, 264. *Endicott Johnson Corp.*
v. *Hurwitz,* 284 Mass. 378, 380. *Cunniff* v. *Cleaves,* 288
Mass. 325. *B. M. C. Durfee Trust Co.* v. *Turner,* 299
Mass. 276, 279. *Robinson* v. *Wm. Brown & Sons Co.* 301
Mass. 316. Any intimations in reported cases to the
contrary, countenancing a right of appeal from a decision
other than a "final decision," cannot be approved. In
the present case the appeal claimed from the decision of

the Appellate Division ordering a new trial was unauthorized by law and of no effect.

It was also unnecessary. An appeal from the final decision of the Appellate Division, made after the new trial, would bring here for review both the first and the second decisions of the Appellate Division, no matter what were the questions of law raised by the second report to the Appellate Division. It is provided that "the appeal shall not remove the cause, but only the question or questions to be determined" (G. L. [Ter. Ed.] c. 231, § 109), and held that the effect of the appeal is only to bring before this court "rulings of law made by the trial judge and reported by him and the action of the Appellate Division thereon." *Moskow* v. *Fine*, 292 Mass. 233, 235. *Hammond* v. *Boston Terminal Co.* 295 Mass. 566, 567. *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 221. *Magrath* v. *Sheehan*, 296 Mass. 263, 264. *Coleman* v. *Wallace*, 299 Mass. 475. *Santosuosso* v. *DellaRusso*, 300 Mass. 247, 250. *Palma* v. *Racz*, 302 Mass. 249. The purpose of limiting the right of appeal to final decisions, under the statute in question as well as under earlier Federal statutes, was to save the expense and delay of repeated appeals in the same case, not to render interlocutory or nonfinal decisions of the tribunal appealed from exempt from review. *Forgay* v. *Conrad*, 6 How. 201, 205. *Smith* v. *Vulcan Iron Works*, 165 U. S. 518, 524. *Spalding* v. *Mason*, 161 U. S. 375, 381. *Panama Railroad* v. *Napier Shipping Co.* 166 U. S. 280, 284. *Schoenamsgruber* v. *Hamburg American Line*, 294 U. S. 454, 458. *Leonardi* v. *Chase National Bank*, 81 Fed. (2d) 19, 20. *A. & R. Realty Co.* v. *Northwestern Mutual Life Ins. Co.* 95 Fed. (2d) 703, 707. The right of the Supreme Court of the United States to review the action of the highest court of a State upon Federal questions is still restricted likewise to the "final judgment or decree." U. S. C. Title 28, § 344. "The rule which excludes the right to review questions arising in a cause depending in a state court until a final judgment is rendered by such court involves as a necessary correlative the power and the duty in this court when a

final judgment in form is rendered and the cause is brought here for review to consider and pass upon all the Federal controversies in the cause irrespective of how far it may be that by the state law such questions were concluded during the litigation and before a final judgment susceptible of review here was rendered." *Louisiana Navigation Co. Ltd.* v. *Oyster Commission of Louisiana,* 226 U. S. 99, 102. *Grays Harbor Logging Co.* v. *Coats-Fordney Logging Co.* 243 U. S. 251, 256, 257. *Georgia Railway & Power Co.* v. *Decatur,* 262 U. S. 432. *Davis* v. *O'Hara,* 266 U. S. 314, 321. *Gant* v. *Oklahoma City,* 289 U. S. 98, 100. See also *Perkins* v. *Fourniquet,* 6 How. 206; *Gibbons* v. *Gibbons,* 296 Mass. 89, for the rule in appeals in equity.

Even though an appellant may voluntarily so restrict the scope of his appeal as not to reach an earlier interlocutory decision of an appellate division (*Buchannan* v. *Meisner,* 279 Mass. 457; *Henry L. Sawyer Co.* v. *Boyajian,* 296 Mass. 215), the present appellant did not do so. The first decision of the Appellate Division, finding error in the first trial and ordering a new trial, may have become the law of the case in the District Court to the extent that the Appellate Division, when the case came to it again, was not bound to reconsider the questions decided before. *Nerbonne* v. *New England Steamship Co.* 288 Mass. 508, 510, and cases cited. *Taylor* v. *Pierce Brothers, Ltd.* 220 Mass. 254. *Luminous Unit Co.* v. *Freeman-Sweet Co.* 3 Fed. (2d) 577. But that first decision did not become the law of the case binding on this court when the entire action of the Appellate Division on both occasions was brought here for review on appeal from the "final decision." *Grays Harbor Logging Co.* v. *Coats-Fordney Logging Co.* 243 U. S. 251, 256, 257. *Davis* v. *O'Hara,* 266 U. S. 314, 321. So far as *Daniels* v. *Cohen,* 249 Mass. 362, may be inconsistent with what is said here, it is not followed.

Where, as in the present case, there was a finding for the plaintiff which was set aside by the Appellate Division with an order for a new trial, "if there was no error at the first trial, the . . . [plaintiff] is entitled to judgment in

accordance with the finding at the first trial." *Stafford* v. *Commonwealth Co.* 263 Mass. 240, 242.   See also *Downey* v. *Levenson,* 247 Mass. 358, 365.   The Appellate Division had no jurisdiction of anything except the correctness of the rulings of the judge in point of law.   If there was no prejudicial error in his rulings at the first trial, the duty of the Appellate Division was to "dismiss the report." G. L. (Ter. Ed.) c. 231, §§ 108, 109.

2. We need not consider whether the defendant might have insisted that the report upon which the Appellate Division made its second and final decision be printed as part of the record.   That report was immaterial to the only point taken by the plaintiff, namely, that there was no error at the first trial, and that he is entitled to judgment upon the finding made at that trial.   The record before us is sufficient to enable us to decide that point. *Wyness* v. *Crowley,* 292 Mass. 459, 461.   The defendant does not assert the contrary.   If that point is well taken, what happened at the second trial has no importance.

We cannot agree that the only appeal entered in this court was a legally nonexistent appeal from the first decision of the Appellate Division.   It may be true that the plaintiff and the clerk held the mistaken opinion, possibly induced by language used in earlier opinions of this court, that the plaintiff had two appeals instead of one.   It is true, that the docket entries state that the plaintiff filed an "order for preparation of record for transmission of appeal first claimed to Supreme Judicial Court," that he later filed a similar order relating to "first and second appeals," and that after being notified by the clerk that $175 was the "estimated cost of preparing record for first appeal" and $375 the "cost of preparing record for both appeals," the plaintiff deposited "$175 to perfect appeal to Supreme Judicial Court."   But if we look at the substance instead of the mistaken wording, it becomes clear that the purpose of the plaintiff was to attack only the first decision of the Appellate Division, that for that purpose he needed only the record of the first trial, that he was notified that that record would cost $175, and that he

paid $175, not for some useless printing, but, as the docket entry declared, "to perfect appeal to Supreme Judicial Court." The clerk had no right to demand or receive his money except upon the footing of an actual and lawful appeal. In substance, the "record for first appeal" meant only the record relating to the first decision of the Appellate Division. The plain purpose of the plaintiff to attack only the first decision of the Appellate Division could be accomplished upon the appeal that he had taken from the final decision. A majority of the court think that his plain purpose to attack the first decision here, overrides his mistaken belief that he could accomplish that purpose upon an appeal from the first decision. Since the appeal from the final decision of the Appellate Division, claimed by the plaintiff, was the only appeal that he had or could have, a majority of the court think that what he entered in this court, after paying all that the clerk required for the only record that was needed, should be deemed to be that appeal, and not some legally nonexistent appeal that he had previously mistakenly claimed.

3. We proceed, therefore, to inquire whether the first decision of the Appellate Division, ordering a new trial, was erroneous.

The evidence in favor of the plaintiff at the first trial, as it appears in the report of the trial judge, may be summarized as follows. A former sales manager had left the employ of the defendant and had formed a competing company, taking with him half the salesmen employed by the defendant in various parts of the country. This made it necessary for the defendant speedily to reorganize its selling force. The plaintiff had sold goods for the defendant years before, but at the time owned and operated a corporation in Boston called G. W. Thompson Co., Inc. which acted as manufacturers' agent. Its business had been profitable but was so no longer. At the request of the defendant, the plaintiff went to the office of the defendant in New York on August 15, 1934, and talked with one Hunt, its vice-president. Enough appears in the report to warrant a finding that Hunt was authorized to enter into a contract

on behalf of the defendant to employ the plaintiff upon the terms hereinafter stated.   Hunt asked the plaintiff to take charge of the sale of druggists' packages and labels for the defendant in New England excepting Connecticut.   Hunt said that the defendant would pay the plaintiff twenty-five per cent on all orders for merchandise received from his territory, and an additional five per cent if the goods should be shipped from the plaintiff's office.   Five per cent of the twenty-five per cent was "a temporary concession" to the plaintiff, given to him for six months, as was more fully explained in a later letter.   The plaintiff said, "This arrangement must be permanent, not temporary."   Hunt responded, "You can have the line as long as you want it. At the end of six months come back and write your own contract."   The making of this response was denied by Hunt.   Hunt testified that "it wasn't the custom to discharge a faithful and efficient employee;   that he would keep . . . [a] faithful and efficient employee in permanent employ . . . and that the employee could depend upon the custom of the whole trade not to be fired."   The plaintiff accepted the employment offered him, and began work at once.   He did not promise to liquidate the business of his corporation at once, but he gave it no further attention. He was discharged without cause on September 15, 1934, exactly one month after his employment.

The contract, being made in New York without reference to the law of any other particular State, is to be interpreted according to the law of New York.   *Clark* v. *State Street Trust Co.* 270 Mass. 140, 150.   Am. Law Inst. Restatement:   Conflict of Laws, §§ 332, 346.   The courts of New York, like those of Massachusetts, are slow to turn a plaintiff out of court for the reason that the promise given and relied on was so vague that it can be given no effect. To have that result, "Indefiniteness must reach the point where construction becomes futile."   *Heyman Cohen & Sons, Inc.* v. *M. Lurie Woolen Co. Inc.* 232 N. Y. 112, 114. *Silver* v. *Graves*, 210 Mass. 26.   *Geo. W. Wilcox, Inc.* v. *Shell Eastern Petroleum Products, Inc.* 283 Mass. 383, 388. Williston, Contracts (Rev. ed.) §§ 37–49.   In the present

case, the evidence is sufficient to show a contract of employment for at least six months. It does not warrant a finding that the defendant undertook at the end of six months to enter into any contract that the plaintiff might choose to present. Such an interpretation of the words "write your own contract" would be unreasonable. All that was meant was that the defendant expected to accept any modification of the terms of employment that the plaintiff might desire after six months of experience. The evidence did not warrant a finding that the defendant agreed to employ the plaintiff for life, leaving it optional with the plaintiff to end his service at will after six months. The "arrangement" which was to be "permanent, not temporary," was apparently bilateral. The plaintiff furnished no consideration except his own implied promise resulting from his acceptance of the position under the "arrangement." *Merrimac Chemical Co.* v. *Moore,* 279 Mass. 147, 155–157. *Economy Grocery Stores Corp.* v. *McMenamy,* 290 Mass. 549, 552. *Merchants Discount Co.* v. *Federal Street Corp.* 300 Mass. 167, 169. *Wood* v. *Duff-Gordon,* 222 N. Y. 88. *Topken, Loring & Schwartz, Inc.* v. *Schwartz,* 249 N. Y. 206. *In re Paramount Publix Corp.* 90 Fed. (2d) 441, 443. By that implied promise he became bound for as long a time as the defendant. The evidence warranted a finding that the parties entered into a contract, not only for employment for six months, but also for permanent employment. Even if the contract should be interpreted, contrary to the findings of the trial judge, as leaving the amount of compensation undetermined after the first six months of the permanent employment, reasonable compensation could be implied. *Evers* v. *Gilfoil,* 247 Mass. 219, 224. *Corthell* v. *Summit Thread Co.* 132 Maine, 94; 92 Am. L. R. 1391. Williston, Contracts (Rev. ed.) § 41. Cases where nothing was deemed settled until further negotiations should be had are distinguishable. *Geo. W. Wilcox, Inc.* v. *Shell Eastern Petroleum Products, Inc.* 283 Mass. 383. *Varney* v. *Ditmars,* 217 N. Y. 223. *Sun Printing & Publishing Association* v. *Remington Paper & Power Co. Inc.* 235 N. Y.

338.  Williston, Contracts (Rev. ed.) § 45.  Am. Law Inst. Restatement: Contracts, § 32, Illustration 10.

Contracts, even oral ones, for "permanent employment" have not infrequently come before the courts.  *Arentz* v. *Morse Dry Dock & Repair Co.* 249 N. Y. 439, 62 Am. L. R. 231, dealt with such a contract.  The court said (pages 443, 444), "Wherever these words, 'permanent employment,' have been used in contracts which have been made between employer and employee, under circumstances as they appear in this case, they have been held to mean a steady employment, a steady job, a position of some permanence, as contrasted with a temporary job or a temporary employment.  Standing alone and by themselves they do not mean life employment. . . . An agreement to give a person permanent employment means nothing more than that the employment is to continue indefinitely and until one or the other of the parties wishes for some good reason to sever the relation. . . . It must follow, therefore, that the employment of this plaintiff by the defendant was in a steady position as assistant or general manager, to continue at the will of the parties.  Plaintiff was not obliged to stay with the defendant for life, neither was the defendant obliged to employ him beyond the time when in good faith it had no further use for his services."  After four years, a discharge because of hard times was held no wrong to the plaintiff.  The fact that in the present case the discharge of the plaintiff took place almost immediately, without cause, and could be found not to have been in good faith, distinguishes the present case from that case.  But its definition of permanent employment must be taken as the law of New York.

This case must be decided in the light of the New York decision just cited.  We cannot substitute for the authoritative interpretation in that case of the words "permanent employment" when used in a New York contract, any varying interpretation of those words found in our own decisions or in those of other jurisdictions.  *Carnig* v. *Carr*, 167 Mass. 544.  *Daniell* v. *Boston & Maine Railroad*, 184 Mass. 337.  *Kirkley* v. *F. H. Roberts Co.* 268 Mass. 246, and cases cited.

*Campion* v. *Boston & Maine Railroad,* 269 Mass. 579.
*Pisco-Pausata* v. *Oliver Ditson Co.* 276 Mass. 377. *Rape*
v. *Mobile & Ohio Railroad,* 136 Miss. 38, 35 Am. L. R.
1422. *Clay* v. *Louisville & Nashville Railroad,* 254 Ky.
271. *Pitcher* v. *United Oil & Gas Syndicate, Inc.* 174 La.
66. *Sullivan* v. *Detroit, Ypsilanti & Ann Arbor Railway,*
135 Mich. 661. *Lynas* v. *Maxwell Farms,* 279 Mich. 684.
*Skagerberg* v. *Blandin Paper Co.* 197 Minn. 291. Williston,
Contracts (Rev. ed.) § 39.

There was evidence that the plaintiff had a reasonable
expectation of earning $6,500 a year, above expenses, from
his employment. It could have been found that, but for
the wrongful conduct of the defendant, his "permanent"
employment would have continued for a considerable time.
No question relating specifically to the assessment of
damages is argued. We think that there was no error at
the first trial, and that the first decision of the Appellate
Division was erroneous. A majority of the court think
that therefore the first order of the Appellate Division
ought to be reversed, that its second order after the new
trial dismissing the second report consequently ought to
be reversed, and that judgment ought to be entered for the
plaintiff upon the finding made at the first trial.

*So ordered.*

The Chief Justice and Justices Donahue and Cox, while
agreeing with much that is said in the opinion of the ma-
jority of the court, are unable to agree with the conclusion
therein reached. They are of opinion that the case should
not be decided on its merits but that the entry should be
"appeal dismissed" since no appeal is properly before this
court.

For reasons stated in the opinion of the majority, an
appeal would not lie from the decision of the Appellate
Division ordering a new trial. Such an "appeal," however,
might in fact be entered upon the docket of this court —
as this "appeal" was — and the usual and proper practice
in such a case is to order the so called "appeal" dismissed.
The appeal from the later decision of the Appellate Divi-

sion, as the papers transmitted to this court show, has never been entered here.

Nothing in the printed record transmitted to this court relates to the proceedings following a claim of appeal from the decision of the Appellate Division ordering a new trial. Unless the appellant is aided by other papers transmitted to this court under G. L. (Ter. Ed.) c. 231, § 135, governing the completion of an appeal, the conclusion must be that the only appeal entered here is the inffective "appeal" from the decision of the Appellate Division ordering a new trial. The appellant is not so aided. The docket entries — a copy of which was so transmitted — include entries relating to a second trial, a report to the Appellate Division, an order dismissing such report, and the filing within five days after such order of a claim of appeal. But it appears also from the docket entries that the appellant filed an order "for preparation of record for transmission of appeal first claimed," that notice of the amount of an estimate of the cost of preparing such record was given to the appellant, that thereafter he filed an order "for preparation of record for first and second appeals," and that thereafter notice of the amount of an estimate of the cost of preparation of such record was given to the appellant — an amount considerably greater than the amount of the estimate of the cost of preparing the "record for transmission of the appeal first claimed." It appears that the appellant paid an amount which was the amount of the estimate of the cost of preparing the "record for transmission of the appeal first claimed," and that the papers were prepared accordingly and entered in this court. Whether or not the clerk should have complied with the order of the appellant for the preparation of the record relating to the appeal first claimed, there is no ambiguity in the docket entries as to what actually took place. The appellant could not have been deceived into thinking that he was obtaining the preparation of a record for entry in this court of any appeal other than the appeal first claimed, that is, the appeal from the decision of the Appellate Division ordering a new trial, and the printed record shows that this was the record actually prepared

and entered in this court. The conclusion seems inevitable that no other appeal is before this court.

The conclusion above reached is not affected by the fact — if it be a fact — that the papers transmitted to this court are sufficient to enable the court to make a decision on the merits of the case. Irrespective of the sufficiency of the papers before the court for this purpose, a decision cannot rightly be made on a case that has not been entered in this court. Nor can it rightly be said that the case ought to be considered on its merits because the clerk included in his estimate of cost of preparing the record the cost of preparing unnecessary papers and so imposed unnecessary expense upon the appellant. If this was the situation, the appellant should have sought relief by action of the court, but without such action he was required, in order to perfect his appeal, to pay the cost as estimated by the clerk of the preparation of the record. Moreover, even if it might conceivably be proper to discuss the merits of the case, though it is not properly entered in this court, if the conclusion reached was in accord with the decision of the Appellate Division, it seems to be clearly wrong to reverse a decision of the Appellate Division on an appeal that is not before this court.