Richard S. ROBIE, Defendant, Appellant,

v.

Edwin I. OFGANT, Plaintiff, Appellee.

No. 5968.

United States Court of Appeals
First Circuit.

Heard May 2, 1962.
Decided July 12, 1962.

James D. St. Clair, Boston, Mass., with whom Blair L. Perry and Hale & Dorr, Boston, Mass., were on brief, for appellant.

Thomas J. Carens, Boston, Mass., with whom Robert J. Sherer, Boston, Mass., and Roche & Leen, Boston, Mass., were on brief, for appellee.

Before HARTIGAN and ALDRICH, Circuit Judges, and GIGNOUX, District Judge.

ALDRICH, Circuit Judge.

This is an action for breach of an alleged oral contract made, if anywhere, in Massachusetts. The plaintiff is now a citizen of Puerto Rico, the defendant of Massachusetts. Both parties are experienced automobile dealers. In 1958 they were associated in an unsuccessful Miami agency. Plaintiff informed defendant that there was a better opportunity in San Juan, Puerto Rico if defendant would finance it. After defendant allegedly promised to provide the financing plaintiff moved to San Juan and took steps to start the business. Defendant did not perform. Plaintiff brought suit and obtained a verdict. Defendant appeals, claiming the evidence was too indefinite as to terms to permit a finding that any contract was entered into, and alleging various errors with respect to damages.

The evidence favorable to the plaintiff would warrant the following. In July 1958 plaintiff went to San Juan to investigate the possibility of a Chrysler distributorship. On his return he telephoned defendant and sought to interest him. He told defendant that it would require an outlay of $250,000, and that he did not have any money. At defendant's suggestion plaintiff went to Detroit and obtained a franchise agreement. Defendant then stated that he would put in $125,000 as capital and make available an equal amount through a finance corporation he controlled. Plaintiff accepted this modification. The parties discussed a prospectus of estimated business. It was agreed that plaintiff would receive a salary of $18,000 a year from the corporation and 25 per cent of the profits. Plaintiff stated that he and his wife would move immediately to Puerto Rico, but nothing was said about defendant's bearing this expense. During the conference defendant telephoned his attorney, a Mr. Ryan, and informed him that he and plaintiff "have completed some arrangements here on a deal in Puerto Rico for the Chrysler distributorship, and I wondered if you could go down next weekend to take care of the details and get this thing set up?" Defendant told plaintiff that what they had discussed was "substantially agreeable" and that Mr. Ryan "would finalize everything." He instructed plaintiff "to get the deal going."

Thereafter counsel in San Juan received detailed instruction from Ryan to form a Puerto Rico corporation containing the names of both parties. Defendant was to supply cash in the amount of $125,000, but the apportionment between capital and indebtedness was left to be later determined. It was understood that the eventual corporate officers and directors were to be defendant, plaintiff, and a number of defendant's designees. The first corporate meeting was held, a building was leased, employees were hired, and the company started doing business, all with defendant's approval but without any expenditure by him. Seemingly this was done on credit, on advances from plaintiff, and with profits from completed sales.[1]

On October 6 defendant informed plaintiff that he was no longer interested in being the sole investor. He gave plaintiff the names of two persons in

---

1. An essential feature of the transaction was an undertaking by the CIT Credit Corporation to finance all new cars. This was to require defendant's personal endorsement, but plaintiff did not inform defendant of that until September. Defendant immediately objected. CIT then stated that it would be satisfied with defendant's endorsement on a so-called conversion guarantee basis. To this defendant agreed. Shortly after CIT had prepared such an agreement defendant announced that he was no longer interested in being the sole investor. Defendant makes much of the endorsement requirement and of its concealment. Under all the circumstances, however, the jury could have found that defendant assented to the modified form and that this was not the ground for his withdrawal. We shall not further consider it.

New York and Miami. Plaintiff called upon both, but failed to interest them. On October 25 plaintiff, defendant and two possibly interested Puerto Ricans met in Boston, following which defendant stated that he would make no commitment at all, although he might consider a limited investment at some future time. Plaintiff stated that the company had $12,000 in immediate bills. Defendant gave plaintiff a check for $5,000 and took back a note.[2] The Puerto Ricans thereafter decided not to invest. Plaintiff endeavored to find other investors, and apparently succeeded in mid-January. However, at that time he became employed in another capacity, and claims no damages after that date. Pausing here parenthetically, we think it clear that defendant committed a total breach at least by October 25, and that his leaving the door informally open thereafter was of no legal consequence.

■■■ We see nothing in defendant's point that the agreement lacked specificity. "The courts * * * of Massachusetts, are slow to turn a plaintiff out of court for the reason that the promise given and relied on was so vague that it can be given no effect." Weiner v. Pictorial Paper Package Corp., 1939, 303 Mass. 123, 131, 20 N.E.2d 458. Agreements far less complete than this one have been enforced. Cygan v. Megathlin, 1951, 326 Mass. 732, 96 N.E.2d 702; Shayeb v. Holland, 1947, 321 Mass. 429, 73 N.E.2d 731. It is true that the details of the loans had not been determined, nor the extent that defendant's capital participation would be represented by stock and by indebtedness. But we think that the jury could be permitted to find that since defendant's chief contribution was the financing, plaintiff's share of the net profits was to be computed before all financing charges. Logan v. Dockray, 1888, 146 Mass. 296, 15 N.E. 635. Hence

it was a matter of indifference whether or how defendant divided his share, if any, between dividends and interest. Nor was the agreement illusory because no term was stated for plaintiff's employment. Even though there was no specified term, having in mind that plaintiff was the finder and entrepreneur we think the jury could well find an implied undertaking that defendant's support, and plaintiff's participation, would last a reasonable length of time. This was not a case of simple employment. Plaintiff had furnished consideration in obtaining the distributorship and his returns could not be cut off by discharging him forthwith. Cf. Allied Equipment Co. v. Weber Engineered Products, Inc., 4 Cir., 1956, 237 F.2d 879; Jack's Cookie Co. v. Brooks, 4 Cir., 1955, 227 F.2d 935, cert. den. 351 U.S. 908, 76 S.Ct. 697, 100 L.Ed. 1443.

■ The Statute of Frauds defense is not worth discussing. Defendant cites no authority for the proposition that an agreement to form and finance a corporation of which he was to be sole stockholder as a means of conducting a joint enterprise with plaintiff was a promise to pay the debt of another. This would be a radical extension of Guinn Co. v. Mazza, D.C. Cir., 1961, 296 F.2d 441. We find the suggestion singularly unappealing. See P. Berry & Sons, Inc. v. Central Trust Co., 1924, 247 Mass. 241, at pp. 244, 245, 142 N.E. 58, at p. 59, where the court said, "[This] section * * * does not apply where the promisor receives something from the promisee for his own benefit."

Plaintiff tried his case, so far as damages were concerned, with no apparent unitary concept. We pass the fact that the evidence was introduced in substantial measure unsystematically, for which the court chided both counsel, except to say that the burden was primarily on the plaintiff.[3] The more fundamental diffi-

---

2. The extent to which defendant may be entitled to credit for this payment will depend upon a final accounting between the parties under the principles hereinafter outlined.

3. At the same time, we are not overly impressed with defendant's excuse, "I have had experience with schedules." It should normally be possible, where claims are liquidated, to reach some pre-trial

culty was the lack of a legal as distinguished from a factual pattern. Thus, while the sole agreement was for the corporation to pay plaintiff at the rate of $1500 a month, plus 25 per cent of the profits, plaintiff sought the salary, the cost of moving to Puerto Rico and his entire living expenses. In addition he sought reimbursement for all corporate and pre-incorporation bills paid for by him, and payment for various unpaid bills without showing that he was legally responsible.

■ Plaintiff's position is that he is entitled to be made whole. There is no question about that, but there are two other principles—his damages must be proven, that is, they must not be speculative, and he must not be made more than whole. The true measure of damages in this case is the salary plaintiff would have received, and his share of the profits, had defendant fully performed for such period as the jury should find it was reasonable to hold defendant was obligated, less whatever diminution should be attributed because of plaintiff's duty to mitigate damages.[4] No evidence was introduced as to profits. As this was an untried business, this was a typical

speculative area. See Narragansett Amusement Co. v. Riverside Park Amusement Co., 1927, 260 Mass. 265, 157 N.E. 5243 and cases cited. But cf. Standard Machinery Co. v. Duncan Shaw Corp., 1 Cir., 1953, 208 F.2d 61. However, plaintiff was permitted to show, in addition to his salary, not only his moving costs, but the full living expenses of himself and his wife from arrival until mid-January. Had there been no breach of defendant's obligation plaintiff's moving and living costs would plainly have been his own responsibility. It has been said that in case of breach of performance and a party's inability to prove the amount of benefits he might have received under the contract he may recover his reasonably incurred expenses as a substitute, subject to elimination upon proof, with the burden on the defendant, that in fact there would have been no profits. Restatement, Contracts, § 333 (1932).[5] A rebuttable presumption, in other words, is established that plaintiff's returns would at least have equalled his expenditures. This shifts, *pro tanto*, inequities due to possible difficulties of proof to the defaulting party. We think this is a fair approach, but it must be properly applied. In the first place the expenses so recov-

---

agreement that does not waive either defendant's rights of cross-examination or his objections to the admissibility of particular items. We suspect that what defendant may have feared was not schedules, but the danger that a schedule would become an exhibit.

4. In addition, of course, plaintiff is entitled to be repaid for bills properly charged to the corporation which he paid out of his own pocket. These may be regarded as loans to the corporation with defendant's assent. Whether this might include any matters incurred after October 25 we will not determine on this record. Conceivably, too, in view of defendant's total breach, plaintiff might recover for unpaid bills as to which he incurred personal responsibility in furtherance of the enterprise. But this is not to say that he could subsequently volunteer personal responsibility simply to effectuate recovery. Local incorporating counsel obviously should be compensated, but we do not find on the present record any ba-

sis for plaintiff's recovering their charges in this action.

5. § 333. *When Damages May Be Measured By Expenditures in Part Performance.*

The amount of the plaintiff's expenditure, reasonably made in performance of the contract or in necessary preparation therefor, is included in compensatory damages, with the following limitations:

(a) Such expenditures are not recoverable in excess of the full contract price promised by the defendant.

(b) Expenditures in preparation are not recoverable unless they can fairly be regarded as part of the cost of performance in estimating profit and loss.

(c) Instalments of the contract price already received and the value of materials on hand that would have been consumed in completion must be deducted.

(d) If full performance would have resulted in a net loss to the plaintiff, the amount of this loss must be deducted, the burden of proof being on the defendant.

ered must be reasonable, and directly related to the contract, with the burden on the plaintiff. Certainly plaintiff would have had some living expenses wherever he had lived. It is only the excess which could be charged against the contract. Restatement section 333(b), supra.[6] In the second place, this principle must not permit a double recovery. There is no duplication between net profits and incurred expense, because net profits, by definition, means above expense. Cf. United States v. Behan, 1884, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168; see also Standard Machinery Co. v. Duncan Shaw Corp., supra; 5 Williston, Contracts (Rev. ed.) § 1363A. But to award expenses (we are not here referring to the corporate bills paid by plaintiff) in addition to gross receipts is necessarily duplicitous, for gross receipts were intended to cover all expenses. It is true that plaintiff did not recover all of his possible gross receipts, viz., his share of the profits, had there been any. But he did recover his full salary, which was part of his promised receipts. Even the Restatement rule cannot be stretched to permit a presumption that his incurred expenses would have been met simply by the unestablished portion of what might have been his gross receipts. Section 333(c), supra.

There remains a question of whether defendant adequately saved his rights as to damages. He did not, so far as the court's charge was concerned, having made no pertinent requests or registered any objections. With respect to admissibility, all damage evidence was admitted *de bene*. At the end of plaintiff's case defendant moved to strike in a carefully itemized motion. In denying this motion in its entirety and without explanation we think the court ruled that all of this evidence could be considered as cumulative and not in the alternative. This is confirmed by the fact that in its charge the court said nothing to the jury

about duplication and the necessity of eliminating items. Cf. W. H. Elliott & Sons Co. v. E. & F. King & Co., 1 Cir., 1961, 291 F.2d 79. (It is also confirmed by the size of the verdict.) The unconditional denial of the defendant's motion to strike was prejudicial error. We are unable to compute a proper remittitur. There must be a new trial on the issue of damages.

Judgment will be entered vacating the judgment of the District Court, setting aside the verdict as to damages, and remanding the action to that court for further proceedings not inconsistent herewith.

---

6. We do not pass on the question, other than to express doubt, whether after defendant's repudiation on October 25 any further expenses could have been incurred against him.